TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00201-CR


NO. 03-94-00202-CR







Kristopher Roth, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NOS. 0935934 & 0935935, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING







 These appeals are taken from convictions for possession of a controlled substance,
to wit: psilocybin (mushrooms) in an amount less than twenty-eight grams and for possession of
a controlled substance, to wit: cocaine in an amount of less than twenty-eight grams. After the
trial court overruled the pretrial motion to suppress evidence, appellant Kristopher Roth entered
a plea of not guilty to each indictment before the court. The evidence was stipulated in the bench
trial with appellant continuing to challenge the admission of the evidence as to the contraband
involved. The trial court found appellant guilty on both charges and assessed his punishment at
five years' imprisonment in each case. The imposition of the sentences was suspended and
appellant was placed on probation in each case for five years subject to certain conditions.

 Appellant advances two points of error, which are virtually the same in both cases. 
Appellant contends that the trial court erred in denying the motions to suppress evidence because
of an illegal entry into his residence, and a warrantless search without consent and without exigent
circumstances in violation of his constitutional rights. In the possession of cocaine case, appellant
argues that the written consent to search was tainted by the violation of his rights and the actions
of the police officers. In the first point of error in each case, appellant relies upon Article I,
Section 9 of the Texas Constitution, and in the second point of error in each case, appellant relies
upon the Fourth and Fourteenth Amendments to the United States Constitution. The facts and the
law are so blended and interwoven, we shall consider the contentions together.



FACTS


 Patrol Officer Carl Yates of the Austin Police Department testified at the
suppression hearing that about 1:15 a.m. on October 23, 1993, he was dispatched to a store at the
corner of Burton and Oltorf streets. There, he encountered two "kids" (ages not given), who
identified themselves as Thomas Ackley and Seth Keller. They informed Yates that the afternoon
before they had gone to appellant's apartment 116 at 2124 Burton Street with Mason Holt, a
runaway juvenile, who had stolen his father's handgun. They believed Holt to still be in the
apartment with plans to stay there. Yates was informed that Holt had sold the handgun to one of
the four adults living in the apartment, that appellant was in possession of mushrooms, and that
he had told them that he had a large quantity of cocaine. They did not profess to have seen any
cocaine. Ackley and Keller told Officer Yates that they were "afraid for their friend being there." 

 Officer Yates checked with the police dispatcher and discovered that Holt's father
had reported his son as a runaway who had taken the father's handgun. At this time, Senior
Sergeants Kornfuehrer and Ortiz, and Officer Vincent were on the scene. The apartment in
question was about one hundred yards away. Yates and the two juveniles went to the apartment. 
Yates stated that it was "[o]ur main intention to find the runaway, Mason Holt, and possibly the
weapon that he had." Officer Yates had Ackley and Keller knock on the front door. Appellant
answered and opened the door "just enough for him to be just looking outside . . . probably not
even enough for his body to go through." Yates then stepped in front of the two juveniles and
asked appellant if Mason Holt was there. Appellant replied in the negative, but when told that
Holt was a runaway, appellant stated: "He's upstairs." Yates stated that it was possible that
appellant could have said: "Wait here, I'll get him," but he did not hear appellant make that
statement. Yates acknowledged that he did not ask to enter or search the house and that appellant
did not invite him into the house.

 Yates recalled that when appellant turned and stepped away, the "door opened
enough for us (1) to just follow him right in. And he looked as though he wanted us to follow him --
or that he didn't mind us following him." Yates did not see appellant pull on the door as he
turned, but the door did open. All four officers entered the apartment. Officer Vincent remained
downstairs. The other three followed appellant up the stairs. As they walked into one of the
bedrooms, appellant stated: "There he is." Holt was seated on a couch and an adult was on a
bed. In the middle of the room was an open metal box containing two mushrooms. The boy,
scales and some baggies were all in plain view. Officer Yates was able to identify the mushrooms
based on his experience and training. Appellant immediately claimed the contraband was his. 
Sergeant Kornfuehrer then told appellant that the officers now had probable cause to obtain a
search warrant but that he could make things "easier" and just give consent to search the
apartment. Kornfuehrer filled out a consent to search form and had appellant sign it. Yates stated
that no promises or inducements were made to get appellant to give consent. He described
appellant as being very cooperative. Thereafter, Yates found a small amount of cocaine in a closet
in the same bedroom. Appellant also claimed the cocaine.

 Appellant testified that Mason Holt was spending the night at the apartment. He
did not know Holt's age. He acknowledged that he first told Officer Yates that Holt was not
there, but when he learned that Holt was a runaway, he told Yates that Holt was upstairs, to wait
at the door, and that he would get Holt. Appellant stated that he did not invite Yates into the
house nor did Yates ask permission to enter. Appellant stated that he pushed the door to close it
but it did not completely close or latch, that he was going up the stairs when he realized that the
officer was just behind him, and that he did not know that he could have told the officer to leave. 
Appellant stated that in the hallway Yates pushed past him and entered the bedroom where Holt
was. After Holt was removed from the room, Yates walked over to a closed "Tacos To Go" box,
opened it up, shined his flashlight into the box and said: "Ah, Shrooms." Appellant explained
that the bedroom had one green light bulb burning and it was very dark. Appellant admitted there
was a closed metal box in the room that contained his birth certificate, "driver's certificate," and
other personal papers. It was not opened during the search. It did not contain any contraband. 
The officers told appellant that they had probable cause for a search warrant after finding the
mushrooms and that police officers would stay in the apartment until someone woke up a judge
and got a search warrant. Thereafter, appellant, who was nervous, signed the consent to search
form.

 Kenneth McFadden testified that he had returned to the apartment from a bar
shortly before the officers with flashlights entered the apartment and came into the bedroom where
he was with Holt. The officers pushed McFadden back on a bed. They then interrogated Holt
and removed him from the room. One officer remained in the bedroom and opened a closed Taco
Bell box on the floor near a window and shined his flashlight into the box and announced there
were mushrooms inside. McFadden knew there was another metal box in the bedroom, where
appellant kept his papers, but he could not recall seeing anyone open that box.

 At the conclusion of the suppression hearing, the trial court took the matter under
advisement, permitting the attorneys to submit any case law desired. Several weeks later the trial
court denied the motion to suppress and entered an identical "statement of facts and conclusions
of law" in each case. These findings simply show that the trial court found that appellant
knowingly and voluntarily consented to the officer's entry into his apartment for the purpose of
locating a "runaway" juvenile; and that as to "all disputed fact issues" (without designating any)
the court believed the testimony of Officer Yates and did not believe the testimony of appellant
and McFadden. The trial court concluded that the consent was freely and voluntarily given and
the evidence was seen in plain view by the officers and was admissible in evidence. These
"statements" appear to relate to the consent to enter the apartment and to the mushrooms found
in the bedroom "in plain view." The "statements" do not appear to touch the written consent to
search or the search of the closet in which the cocaine, which clearly was not in plain view, was
found. There were no findings as to exigent circumstances or the emergency doctrine. The trial
court apparently did not consider that theory.



RULINGS AT A SUPPRESSION HEARING


 In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject any or all of any
witness's testimony. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); Allridge v.
State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991), cert. denied, 114 S.Ct. 101 (1993). The
trial court resolves all conflicts in the testimony. Hawkins v. State, 853 S.W.2d 598, 600 (Tex.
App.--Amarillo 1993, no pet.) An appellate court must view the evidence in the light most
favorable to the trial court's ruling at the suppression hearing. Upton v. State, 853 S.W.2d 548,
553 (Tex. Crim. App. 1993); State v. Hamlin, 871 S.W.2d 790, 792 (Tex. App.--Houston [14th
Dist.] 1994, pet. ref'd); Spillman v. State, 824 S.W.2d 806, 810 (Tex. App.--Austin 1992, pet.
ref'd). If the trial court's findings are supported by the record, an appellate court will not disturb
the findings absent an abuse of discretion. Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim. App.
1991). On appellate review, the court will normally address only the question whether the trial
court improperly applied the law to the facts. Romero, 800 S.W.2d at 543.



WARRANTLESS INTRUSIONS ARE PRESUMPTIVELY UNREASONABLE


 The Fourth Amendment proscribes unreasonable searches and seizures. The
"physical entry of the home is the chief evil against which the wording of the Fourth Amendment
is directed." United States v. United States District Court, 407 U.S. 297, 313 (1972); Janicek
v. State, 634 S.W.2d 687, 690 (Tex. Crim. App. 1982). The primary purpose of the Fourth
Amendment is to protect citizens from unauthorized intrusions in their homes. Payton v. New
York, 445 U.S. 573, 583 (1980); see also Boyd v. United States, 116 U.S. 616, 630 (1882). 
Article I, section 9 of the Texas Constitution has been held to protect against intruding into so
lowly an abode as a tent. Chapin v. State, 296 S.W. 1095, 1096-97 (Tex. Crim. App. 1927); see
also Janicek, 634 S.W.2d at 690-91.

 Warrantless intrusions and searches are presumptively unreasonable. United States
v. Karo, 468 U.S. 705, 717 (1984); Moss v. State, 878 S.W.2d 632, 641 (Tex. App.--San Antonio
1994, pet. ref'd). A warrantless search is permissible only in rare circumstances. Roeder v.
State, 768 S.W.2d 745, 748 (Tex. App.--Houston [1st Dist.] 1988, pet. ref'd) (citing Mincey v.
Arizona, 437 U.S. 385 (1978) and Katz v. United States, 389 U.S. 347 (1967)). The burden of
proving any exception to the warrant requirement falls on the prosecution. McDonald v. United
States, 335 U.S. 451, 455-56 (1948); Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App.
1986); Moss, 878 S.W.2d at 641.



CONSENT TO ENTER 


 One of the specifically established exceptions to the requirements of both a warrant
and probable cause is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412
U.S. 218, 219 (1973); Davis v. United States, 328 U.S. 582, 593-94 (1946); Juarez v. State, 758
S.W.2d 772, 776 (Tex. Crim. App. 1988); Kolb v. State, 532 S.W.2d 87, 89-90 (Tex. Crim.
App. 1976). The protections afforded by the Fourth Amendment and Article I, section 9 of the
Texas Constitution may be waived by an individual who consents to a search. Kolb, 532 S.W.2d
at 89-90; Spears v. State, 801 S.W.2d 571, 575 (Tex. App.--Fort Worth 1990, pet. ref'd).

 Consent, of course, must be freely and voluntarily given to be effective. Johnson
v. State, 803 S.W.2d 272, 286 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991). The
burden is on the State to show by clear and convincing evidence that the consent was freely and
voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968); Moss, 878 S.W.2d at
642. The burden requires the prosecution to show that the consent given was positive and
unequivocal, and there must not be duress or coercion, actual or implied. Meeks v. State, 692
S.W.2d 504, 509 (Tex. Crim. App. 1985). Clearly, the consent must not be physically or
psychologically coerced. Paprskar v. State, 484 S.W.2d 731, 737 (Tex. Crim. App. 1972),
overruled on other grounds, Kolb, 532 S.W.2d at 89 n.2. The State's burden cannot be
discharged by showing mere acquiescence to a claim of lawful authority. Kolb, 532 S.W.2d at
89-90. Moreover, consent to search is not to be lightly inferred. Id. Whether a consent to search
was in fact voluntary is a question of fact to be determined from the "totality of the
circumstances." Schneckloth, 412 U.S. at 227; Juarez, 758 S.W.2d at 775; Dickey v. State, 716
S.W.2d 499, 504 (Tex. Crim. App. 1986).

 Can it be said that the State sustained its burden of demonstrating by clear and
convincing evidence that appellant's consent for the officer or officers to enter was freely and
voluntarily given and that the consent was positive and unequivocal? The police (2) went to
appellant's apartment in the early morning hours. Officer Yates used two juveniles to get
appellant to answer the door. Then, he stepped into sight. Both Yates and appellant agreed that
there was no request to enter or to search nor was there an invitation to enter. Yates did not see
appellant pull on the door, but stated it opened further as appellant turned away. Yates
subjectively thought that appellant "looked as though" he wanted the officers to follow or did not
"mind" if they did. The entry of the four officers into the apartment followed.

 We conclude that the State did not sustain its burden considering the evidence in
the light most favorable to the trial court's ruling. Consent to enter or to search is not to be
lightly inferred. Juarez, 758 S.W.2d at 775; Green v. State, 594 S.W.2d 72, 74 (Tex. Crim.
App. 1980). Moreover, consent is not voluntarily given if there is nothing more than
acquiescence to a claim of lawful authority. Reyes v. State, 741 S.W.2d 414, 430 (Tex. Crim.
App. 1987); Howe v. State, 874 S.W.2d 895, 901-02 (Tex. App.--Austin 1994, no pet.). No
waiver of constitutional immunity could be inferred from the singular act of opening the front
door. Green v. State, 666 S.W.2d 291, 293 (Tex. App.--Houston [14th Dist.] 1984, no pet.). In
order to waive a constitutional right, a party must intentionally relinquish a known right or
privilege. Capistran v. State, 759 S.W.2d 121, 123 (Tex. Crim. App. 1982); Kolb, 532 S.W.2d
at 89. The consent to enter appellant's apartment was not shown to have been freely and
voluntarily given under the totality of the circumstances. The trial court abused its discretion in
so finding and improperly applied the law in so far as the matter of consent to enter the apartment
is concerned.



SUPPRESSION DECISION MAY BE UPHELD ON ANY VALID THEORY


 If the trial court's decision is correct on any theory of law applicable to the case
and supported by the record, the decision will be sustained even though the trial court may have
given the wrong reason for suppressing the evidence. Romero, 800 S.W.2d at 543; Calloway v.
State, 743 S.W.2d 645, 651-52 (Tex. Crim. App. 1988); Shannon v. State, 800 S.W.2d 896, 899
(Tex. App.--San Antonio 1990, pet. ref'd). The suppression ruling will be sustained if it can be
upheld on any valid theory regardless whether the State argued it at trial or on appeal. Lewis v.
State, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984); Nored v. State, 875 S.W.2d 392, 395 (Tex.
App.--Dallas 1993, pet. ref'd). Therefore, we will consider whether the warrantless entry into
appellant's apartment is sustainable under the exigent circumstances exception to the warrant
requirement as the State urges on appeal.



EXIGENT CIRCUMSTANCES


 Another recognized exception to the warrant requirement is exigent circumstances. 
Stewart v. State, 681 S.W.2d 774, 777 (Tex. App.--Houston [14th Dist.] 1984, pet. ref'd). 
Circumstances may place a police officer in situations in which a warrantless entry or intrusion
is a reasonable reaction by the officer. Moss, 878 S.W.2d at 641. It is generally accepted that
"the Fourth Amendment does not bar police officers from making warrantless entries and seizures
when they reasonably believe that a person within is in need of immediate aid." Mincey, 437 U.S.
at 392; see also Winslow v. State, 742 S.W.2d 801, 804 (Tex. App.--Corpus Christi 1987, pet.
ref'd). "The need to protect or preserve life or avoid serious injury is justification for what would
be otherwise illegal absent an exigency or emergency." Mincey, 437 U.S. at 392. The exigent
circumstances exception is also known as the emergency doctrine. Bray v. State, 597 S.W.2d
763, 764 (Tex. Crim. App. 1980).

 The burden of proof is on the State to demonstrate that the warrantless entry was
justified by an emergency. Janicek, 634 S.W.2d at 691; Bray, 597 S.W.2d at 765; Pine v. State,
889 S.W.2d 625, 631 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). The reasonableness of
the emergency entry is to be judged by the circumstances as they existed at the time the decision
was made to enter rather than being affected by whatever condition is found inside. Janicek, 634
S.W.2d at 691; Winslow, 742 S.W.2d at 804. In assessing an officer's belief that a warrantless
entry was justified by an emergency, an objective standard of reasonableness is applied. Janicek,
634 S.W.2d at 691; Bray, 597 S.W.2d at 765; Spears v. State, 801 S.W.2d 571, 574 (Tex.
App.--Fort Worth 1990, pet. ref'd). Moreover, a warrantless search must be strictly
circumscribed by the exigencies which justify its initiation. Mincey, 437 U.S. at 397; Bass v.
State, 732 S.W.2d 632, 635 (Tex. Crim. App. 1987). The protections of the Fourth Amendment
require that the scope of the search be limited to the circumstances justifying the warrantless entry
and search and no farther. Martinez v. State, 792 S.W.2d 525, 528 (Tex. App.--Houston [1st
Dist.] 1990, no pet.); Roeder, 768 S.W.2d at 749. The police, however, may seize evidence that
is in plain view during the course of their legitimate emergency activities. Michigan v. Tyler, 436
U.S. 499, 509-10 (1978); Bass, 732 S.W.2d at 635.

 To justify the entry and search of a residence without a warrant under the exigent
circumstances exception, the State must (1) show probable cause to enter and search the residence
at the time, and (2) show that obtaining a search warrant was impracticable because there was an
immediate need to act in order to protect or preserve life or prevent serious injury. Bray, 597
S.W.2d at 764; see also Brimage v. State, No. 70, 105 (Tex. Crim. App. 1994); McNairy v.
State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991); Nastu v. State, 589 S.W.2d 434, 439 (Tex.
Crim. App. 1979), cert. denied, 447 U.S. 911 (1980). "Situations creating exigent circumstances
usually include factors pointing to some danger to the officer or victim, an increased likelihood
of apprehending a suspect, or the possible destruction or removal of evidence." McNairy, 835
S.W.2d at 107; Stewart, 681 S.W.2d at 777. The reasons for which the police "might legitimately
enter a private area are so varied that generalization is virtually impossible." 2 Wayne R.
LaFave, Search and Seizure, § 6.6(c) at 700 (2d ed. 1987) (hereinafter LaFave). Each case must
be considered on its own facts. Green, 666 S.W.2d at 294. The police, of course, must not be
primarily motivated by a desire to arrest a person or seize evidence. LaFave, § 6.6(a) at 700.

 Here, Officer Yates learned in the early morning hours that Holt was a runaway
juvenile who had stolen his father's handgun. From two juveniles, whom he had not previously
encountered, Yates obtained information that Holt was in appellant's apartment and had disposed
of the handgun by selling it to an adult in the apartment. The juveniles told Yates there were
narcotics in the apartment. They had been in the apartment the previous afternoon and had left,
but Holt had willingly stayed.

 Section 52.01(a)(3) of the Texas Family Code provides in pertinent part:


(a) a child may be taken into custody:


 . . .


 (3) by a law-enforcement officer, including a school district peace officer
commissioned under section 21.483, Education Code, if there are
reasonable grounds to believe that the child has engaged in delinquent
conduct or conduct indicating a need for supervision.



Tex. Fam. Code Ann. § 52.01(a)(3) (West Supp. 1995); see also Spears, 801 S.W.2d at 575. It
appears that this statute would permit an officer to take a "child" (3) into custody without a warrant
under certain circumstances. We do not read the statute as authorizing the warrantless entry into
a residence for the purpose of taking custody of a child without a warrant. In Payton, the United
States Supreme Court held that a warrantless, consensual entry into a suspect's home to make a
routine felony arrest violated the Fourth Amendment made applicable to the states by the
Fourteenth Amendment. 445 U.S. at 575-603. New York statutes authorizing such procedure
were held unconstitutional as being inconsistent with the Fourth Amendment. The Court noted
that an invasion of the sanctity of the home was simply too substantial an invasion to be allowed
without a warrant, at least in the absence of exigent circumstances, even when it is accomplished
under statutory authority and when probable cause is clearly present. Id. at 589; see also United
States v. Carrillo-Morales, 27 F.3d 1054, 1061 (5th Cir. 1994); United States v. Richard, 994
F.2d 244, 247 (5th Cir. 1993).

 Even if it can be said that the officer had probable cause to search appellant's
apartment regarding the reported runaway juvenile, (4) there must have been exigent circumstances. 
The State made no effort at the suppression hearing to demonstrate the impracticality of first
securing a search warrant. (5) Although it was in the early morning hours, the officers later told
appellant that they could easily obtain a search warrant if he did not consent to a search. 
Moreover, was the juvenile in immediate need of aid? Was he in danger of losing his life or
suffering serious bodily injury? The two juveniles, Ackley and Keller, told Officer Yates they
were "afraid" for their friend. If they gave reasons for their concern, Officer Yates, the sole
State's witness, did not articulate them in his testimony. Ackley and Keller had freely left the
apartment in the afternoon. They reported that Holt had willingly stayed. They saw mushrooms
and reported a hearsay statement about the presence of cocaine. They did not say they were given
or used any narcotics, or that they or Holt had been abused or threatened in any way. The gun
had been sold and was no longer in Holt's possession. What was the degree of urgency? What
amount of time would have been necessary to secure a warrant? Testimony along this line was
not developed. The burden was on the State to show the exigent circumstances. One of the
reasons the trial court did not suppress evidence on this basis may have been because the State's
evidence did not support this theory. Of course, anyone would be concerned with the welfare of
the runaway juvenile, but we cannot conclude that the State has shown circumstances justifying
the warrantless invasion of the sanctity of a home. The exception to the warrant requirement of
the Fourth Amendment must not be allowed unless the burden of proof is met.

 Not having valid consent and without exigent circumstances having been
sufficiently shown, Officer Yates did not have the right to be where he was when he saw
mushrooms (psilocybin) in plain view. Items in "plain view" may be seized by law enforcement
personnel if (1) the initial intrusion was proper, that is the police have a right to be where they
are when the discovery is made, and (2) it is "immediately apparent" to the police that they have
evidence before them (i.e., probable cause to associate the property with criminal activity). State
v. Haley, 811 S.W.2d 600, 603 (Tex. Crim. App. 1992). The former requirement that the
discovery of the evidence must be inadvertent is no longer a necessary condition of a legitimate
"plain view" seizure under the Fourth Amendment. See Horton v. California, 110 S.Ct. 2301,
2304 (1990). Since the first requirement was not met, the seizure of the mushrooms was invalid,
and the evidence surrounding the seizure of these items was inadmissible and should have been
suppressed.



CONSENT TO SEARCH


 We are left with the seizure of the cocaine by virtue of appellant's written consent
to search, which was executed after the finding of the mushrooms and appellant's arrest. Our
earlier discussion on the law of consent is again applicable here. While an illegal arrest,
detention, or stop does not automatically invalidate a consent to search, neither will a voluntary
consent automatically validate a search which follows an illegal arrest, detention, or stop. Juarez,
758 S.W.2d at 779; Howe, 874 S.W.2d at 902. Thus, even if the consent to search is found to
have been voluntarily given, that is only one step in the determination of the propriety of the
search. The consent may have been obtained by the exploitation of an illegal arrest or detention. 
Juarez, 758 S.W.2d at 778. The question then becomes whether the consent to search was
obtained by the exploitation of an illegal arrest or detention or "by means sufficiently
distinguishable to be purged of the primary taint." Brown v. Illinois, 422 U.S. 590, 599 (1975)
(quoting Wong Sun v. United States, 371 U.S. 471, 487-88 (1963)).

 In Brown, the United States Supreme Court identified four factors to be considered
in determining whether a confession given following an illegal arrest is sufficiently attenuated to
permit the use of the confession at trial. These factors have not been limited to confession cases
but applied to consent to search cases. See Boyle v. State, 820 S.W.2d 122, 132 n.10 (Tex. Crim.
App. 1989); Juarez, 758 S.W.2d at 780; Howe, 874 S.W.2d at 902.

 The first factor is whether any Miranda (6) warnings were given. There is no direct
evidence that appellant was ever given his Miranda warnings as such or informed that he had a
right to refuse to consent to a search. While a warning that an individual does not have to consent
to a search is not essential to the validity of a voluntary consent, the lack of any warning is
probative on the issue of voluntariness. (7) Meeks v. State, 62 S.W.2d 504, 510 (Tex. Crim. App.
1985). The record does show that appellant signed a form which contained the phrase "having
been informed of my constitutional right not to have a search made of the building, premises,
and/or vehicle(s) . . . ." (emphasis added). There was no show showing, however, that the form
was read or explained to appellant or that he read and understood the same. The first factor falls
on appellant's side of the ledger.

 The second factor of the Brown analysis is the temporal proximity of the detention
and the consent to search. The exact time is not revealed by the record, but it appears that the
consent followed "hard on the heels" of the illegal detention. This second factor is based on the
reasoning that the shorter the time, the more likely that the taint of the illegal arrest has not been
purged. Juarez, 758 S.W.2d at 781.

 The third factor is the presence of intervening circumstances. The State made no
showing as to the third factor.

 The fourth factor is the purpose and flagrancy of the official misconduct. The
Brown court gave this factor particular emphasis. Juarez, 758 S.W.2d at 782. Without reiterating
the evidence, it is clear that Officer Yates used the juveniles to get appellant to answer the door
and entered the house using the position of the door as "consent." The actions of the police
indicated that with regard to the narcotics, a "quality of purposefulness" and an undertaking "in
the hope something might turn up." Brown, 422 U.S. at 605; Juarez, 758 S.W.2d at 783. All
four factors fall on appellant's side of the ledger.

 Given the circumstances, we conclude, as a matter of law, that the cocaine was
obtained by the exploitation of an illegal arrest and detention and was not shown by the State to
have been obtained by means sufficiently distinguishable to be purged of the primary taint. The
trial court erred in failing to suppress the evidence. Howe, 874 S.W.2d at 903. Appellant's
second point of error based on the Fourth Amendment is sustained. For the same reasons,
appellant's first point of error based on Article I, section 9 of the Texas Constitution is sustained.

 The judgments are reversed and the causes are remanded to the trial court.



 

 John F. Onion, Jr., Justice

Before Justices Powers, B. A. Smith and Onion*

Reversed and Remanded on Both Causes

Filed: November 15, 1995

Do Not Publish Released for publication January 10, 1996. Tex. R. App. P. 90(c).










* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   The position of the other officers at the time is not reflected by the record.
2.   The meager record does not show whether the police officers were in uniform and
armed. It does show that they were on duty and on patrol when dispatched to the scene.
3.   "Child" means a person under eighteen years of age who is not or has not been married
or who has not had his disabilities of minority removed for general purposes. Tex. Fam.
Code Ann. § 11.01(1) (West Supp. 1995). See also Tex. Fam. Code Ann. § 51.02(1)(A), (B)
(West 1986). The age of Mason Holt was not revealed by the evidence. In colloquy, the trial
court made reference to a thirteen year old boy, and Officer Yates's offense report, found in the
transcript but not introduced into evidence, refers to a fourteen year old boy.
4.   Probable cause for belief that certain articles subject to seizure are in a dwelling cannot
of itself justify a search without a warrant. Agnello v. United States, 269 U.S. 20, 33 (1925). 
Thus, the warrantless entry of the apartment in question cannot be justified on the basis of
probable cause to search for narcotics or other items.
5.   Exigent circumstances justify a warrantless search or seizure only if it is impracticable
to obtain a warrant. 79 C.J.S., Searches and Seizures, § 59 at 90; State v. Lopez, 763 S.W.2d
939, 943 (Tex. App.--Houston [1st Dist.] 1989, pet. ref'd).
6.   Miranda v. Arizona, 384 U.S. 436 (1966).
7.   Custody is also one factor to be considered on the issue of voluntariness. Howe, 874
S.W.2d at 901. Consent to search in response to a threat to obtain a search warrant does not in
itself render the consent involuntary, but it is a factor to be considered. Johnson, 803 S.W.2d at
287. For other possible factors to be considered, see Dawson v. State, 868 S.W.2d 363, 368
(Tex. App.--Dallas 1993, pet. ref'd).



>, 758 S.W.2d at 782. Without reiterating
the evidence, it is clear that Officer Yates used the juveniles to get appellant to answer the door
and entered the house using the position of the door as "consent." The actions of the police
indicated that with regard to the narcotics, a "quality of purposefulness" and an undertaking "in
the hope something might turn up." Brown, 422 U.S. at 605; Juarez