TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON REMAND








NO. 03-96-00085-CR







William Combest, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY, 


NO. 42,213, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING







 Appellant William Combest entered a nolo contendere plea and was convicted of
the misdemeanor offense of driving a motor vehicle in a public place while intoxicated. See Act
of May 27, 1983, 68th Leg., R.S., ch 303 §3, 1983 Tex. Gen. Laws 1568, 1575 (Tex. Rev. Civ.
Stat. Ann. art. 6701l-1(b), since amended and codified at Tex. Penal Code Ann. § 49.04 (West
1994 and Supp. 1998)). We affirmed the trial court's judgment and overruled appellant's sole
point of error which asserted that the trial court erred in refusing to suppress evidence obtained
from an analysis of his blood because the blood was unlawfully seized in violation of his
constitutional rights. See Combest v. State, 953 S.W.2d 453 (Tex. App.--Austin 1997, pet.
granted).

 Appellant filed, and the Court of Criminal Appeals granted, a petition for
discretionary review. The Court of Criminal Appeals, in an unpublished majority opinion,
vacated our decision and remanded the cause for reconsideration in light of Guzman v. State, 955
S.W.2d 85 (Tex. Crim. App. 1997). Our decision in this case was handed down before the Court
of Criminal Appeal's decision in Guzman. We relied upon Dubose v. State, 915 S.W.2d 493
(Tex. Crim. App. 1996), but it was expressly overruled by Guzman. We will comply with the
Court of Criminal Appeal's mandate. We will not step "outside the scope of [the] Court's remand
order." See Williams v. State, 829 S.W.2d 216, 217 (Tex. Crim. App. 1992).

 Following the lead of the United States Supreme Court in Ornelas v. United States,
517 U.S. 690 (1996), the Court of Criminal Appeals held that although great weight should be
given to the inferences drawn by trial judges and law enforcement officers, determinations of
reasonable suspicion and probable cause should be reviewed de novo on appeal. Guzman, 955
S.W.2d at 87.


[I]t is very difficult to articulate a comprehensive consensus rule on the amount of
deference appellate courts should afford to lower court rulings.


 However, as a general rule, the appellate courts, including this Court,
should afford almost total deference to a trial court's determination of the historical
facts that the record supports especially when the trial court's fact findings are
based on an evaluation of credibility and demeanor. See, e.g., Villarreal, 935
S.W.2d at 139-41 (McCormick, P.J., concurring). The appellate courts, including
this Court, should afford the same amount of deference to trial courts' rulings on
"application of law to fact questions," also known as "mixed questions of law and
fact," if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. See id. The appellate courts may review de novo
"mixed questions of law and fact" not falling within this category. See id. This
Court may exercise its discretion to review de novo these decisions by the
intermediate appellate courts. See id. This is about as comprehensive a statement
of the applicable standards that we can provide. See Villarreal, 935 S.W.2d at 139
(McCormick, P.J., concurring) (if trial court "is not in an appreciably better
position than the appellate court to decide the issue, the appellate court may
independently determine the issue while affording deference to the trial court's
findings on subsidiary factual questions.).


* * * * *



Our decision does not call into question the "very definition of abuse of
discretion." We merely decide that an abuse of discretion standard does not
necessarily apply to "application of law to fact questions" whose resolution do not
turn on an evaluation of credibility and demeanor.



Guzman, 955 S.W.2d at 89; see also Loserth v. State, 963 S.W.2d 770, 771-73 (Tex. Crim. App.
1998).

 The issue presented in this case is whether appellant's consent to search was
voluntary. Voluntary consent to search is an exception to the requirement of probable cause for
a warrantless search. Therefore, by remanding this case, the Court of Criminal Appeals has
logically expanded the Guzman de novo standard of appellate review to include the determination
of voluntariness of consent to search.

 The evidence admitted on the hearing of appellant's motion to suppress will be
summarized. On January 30, 1994, Trooper Daryl White responded to a call concerning a two
vehicle head-on collision. Appellant suffered injuries to his face and hand and was bleeding. 
Trooper White talked to appellant and detected an odor of alcohol and observed his bloodshot
eyes. Appellant, however, responded appropriately to Trooper White's questions. Due to
appellant's injuries, Trooper White did not have him perform any sobriety tests. Appellant was
not placed under arrest and was treated at Central Texas Medical Center. At the hospital Trooper
White asked appellant if he would give a specimen of his blood for analysis. Trooper White gave
appellant Miranda warnings and read appellant the DWI statutory warning (DIC-24). The DWI
statutory warning advises a person that he has been placed under arrest for driving while
intoxicated and that a refusal to submit to a taking of blood will result in an automatic license
suspension and may be admissible as evidence against the person in court. Trooper White also
had appellant sign a DPS consent form that states that the person consenting to give the blood
specimen has been placed under arrest. After appellant gave a blood specimen, Trooper White
told him that a determination of whether to issue an arrest warrant would be made after an analysis
of the blood specimen. Trooper White explained to appellant that if he passed the test "he
probably would not hear from me on it." Trooper White admitted that he hadn't made any
determination of whether appellant was intoxicated and wanted to wait for the blood test results. 
Trooper White used the DIC-24 statutory warning to obtain appellant's blood because he did not
have an equivalent form for use in a non-arrest situation. Appellant did not testify.

 Appellant and the State both agree, and the record affirms, that appellant was not
under arrest nor in custody at the time he consented to give the blood specimen. Because appellant
was not under arrest when he gave the blood specimen, the statutory implied consent provision
for taking a blood specimen was not applicable. See Act of May 27, 1983, 68th Leg., R.S., ch. 303,
§ 4, 1983 Tex. Gen. Laws 1568, 1577 (Tex. Rev. Civ. Stat. Ann. art. 6701l-5, § 1, 2(a)(b) since
amended and codified at Tex. Transp. Code Ann. § 724.011-724.019 (West Supp. 1997)); Aliff
v. State, 627 S.W.2d 166, 168 (Tex. Crim. App. 1982); Nottingham v. State, 908 S.W.2d 585,
589 (Tex. App.--Austin 1995, no pet.). The State urges that the blood specimen obtained from
appellant without a warrant was lawfully obtained because appellant gave his consent.

 The taking of a blood specimen is considered a search and seizure within the
meaning of the Fourth Amendment to the United States Constitution. Schmerber v. California,
384 U.S. 757, 769 (1966); Aliff, 627 S.W.2d at 168-69. Both federal and state constitutions
prohibit unreasonable searches and seizures. Juarez v. State, 758 S.W.2d 772, 775 (Tex. Crim.
App. 1988); State v. Comeaux, 786 S.W.2d 480, 483 (Tex. App.--Austin 1990), aff'd, 818
S.W.2d 46 (Tex. Crim. App. 1991). A warrantless search is per se unreasonable subject to only
a few exceptions. Katz v. United States, 389 U.S. 347, 357 (1967); Reyes v. State, 741 S.W.2d
414, 430 (Tex. Crim. App. 1987). Consent for a search is an exception to the requirement for
a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Roth v.
State, 917 S.W.2d 292, 299 (Tex. App.--Austin 1995, no pet.).

 Whether consent to a search is in fact voluntary and not the product of duress and
coercion, express or implied, is a question of fact to be determined from the totality of the
circumstances. See Schneckloth, 412 U.S. at 218. The Supreme Court has held that the
prosecution's burden of proof in a suppression hearing to determine voluntariness of consent to
search is by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 177
(1974). The United States Court of Appeals for the Fifth Circuit overruled prior cases and
adopted the preponderance of the evidence standard of proof in suppression hearings to determine
the voluntariness of consent to seach. United States v. Hurtado, 905 F.2d 74, 75 (5th Cir. 1990) 
(en banc). However, the standard of proof which Texas courts have applied in determining
whether consent is voluntary is proof by clear and convincing evidence. See, e.g., Allridge v.
State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991); Roth, 917 S.W.2d at 300.

 Appellant gave written consent to the search. Therefore, the pivotal issue before
the trial court at the suppression hearing was whether appellant's written consent to give a
specimen of his blood was voluntary. The "Police Officer D.W.I. Statutory Warning" form DIC-24 that Trooper White read to appellant was not appropriate for use when appellant was not under
arrest. Although appellant was not under arrest, the form read to him stated that he was under
arrest. Also, that form stated that appellant's refusal to give a specimen of his blood for analysis
would result in the suspension of his drivers license for ninety days and that in any subsequent
prosecution his refusal might be admissible. After the warning was read to appellant he signed
a "Subject's Consent Form" which also stated that appellant had been placed under arrest for
driving a motor vehicle on a public highway while intoxicated. Appellant contends that even
though he was not under arrest, the language of these forms brought "great psychological pressure
to bear upon the decision to give a blood specimen." Moreover, appellant argues that the language
of these forms that misstated the consequences of his refusal to give a blood specimen was so
coercive that his consent was not voluntary. However, it is not the presence of a coercive factor
which makes consent involuntary but rather that the consent was given as a result of the coercion.

 To summarize, it is our duty in this case to determine de novo from the totality of
the circumstances presented by the record whether the State proved by clear and convincing
evidence that appellant's consent for the taking of his blood was voluntary. Because appellant has
combined both federal and state claims that his blood was unlawfully obtained in the same point
or error, we have not reviewed his state claim. See Lawton v. State, 913 S.W.2d 542, 558 (Tex.
Crim. App. 1995); Robinson v. State, 851 S.W.2d 216, 222 n.4 (Tex. Crim. App. 1991); Riordan
v. State, 906 S.W.2d 765, 772 n.6 (Tex. App.--Austin 1995, no pet.); Martinets v. State, 884
S.W.2d 185, 188-89 (Tex. App.--Austin 1994, no pet.).

 Courts and commentators have enumerated various factors, which are found within
the totality of the circumstances in different cases, that should be considered in determining the
voluntariness of consent searches. LaFave discusses a number of factors that bear upon the
validity of consent. Among these factors are: (1) a claim of authority, (2) a show of force or
coercive surroundings, (3) a threat to seek or obtain a search warrant, (4) an officer's deception
of identity or purpose, (5) prior unlawful police action, (6) whether Miranda warnings were given,
(7) whether a defendant was aware of his Fourth Amendment rights, (8) a defendant's confession
or other cooperation, (9) defendant's denial of guilt, and (10) a defendant's maturity,
sophistication, mental or emotional state. 3 Wayne R. LaFave, Search and Seizure, A Treatise
on the Fourth Amendment § 8.2, 643-713 (3d ed. 1996).

 The United States Court of Appeals for the Fifth Circuit has settled on six factors
it considers in determining the voluntariness of consent to search. They are: (1) the voluntariness
of a defendant's custodial status, (2) the presence of coercive police procedures, (3) the extent and
level of a defendant's cooperation with the police, (4) the defendant's awareness of his right to
refuse to consent, (5) the defendant's education and intelligence, and (6) the defendant's belief that
no incriminating evidence will be found. See United States v. Brown, 102 F.3d 1390, 1396 (5th
Cir. 1996); United States v. Kelley, 981 F.2d 1464, 1470 (5th Cir. 1993); United States v. Yeagin,
927 S.W.2d 798, 800 (5th Cir. 1991); United States v. Phillips, 664 F.2d 971, 1023-24 (5th Cir.
1981). See also United States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996); United States
v. Sanchez-Valderuten, 11 F.3d 985 (10th Cir. 1993).

 In this case, the totality of the circumstances included a number of factors for
consideration in determining whether appellant voluntarily consented to give a specimen of his
blood: (1) Appellant was not under arrest or in custody when he consented to give a blood
specimen for analysis. Appellant was not arrested until several months later after the blood test
results were obtained. (2) When he gave consent, although not seriously injured, appellant was in
a medical center and not in coercive jail house surroundings. (3) No physical force was used on
appellant and he was cooperative. (4) Appellant was not interrogated by the officer and the officer
did not ask appellant to perform any of the customary field sobriety tests. (5) The officer did not
claim to have, or threaten to obtain, a search warrant. (6) Appellant was given Miranda warnings. 
(7) Appellant makes no claim that he was unaware of his Fourth Amendment rights and there is
nothing to rebut the presumption that he was aware of those rights. (8) There is no claim that
appellant was immature, uneducated, or unsophisticated. (9) It may reasonably be inferred from the
circumstances that appellant was motivated to give his blood for analysis because of a belief it would
show he was not intoxicated. (10) At the time consent was given by appellant, he was not under
arrest and he voiced no concern about the wording of the forms read to him by the officer.

 Appellant's claim that psychological coercion resulting from the wording of the forms
caused him to consent to give his blood for analysis is not supported by any of his conduct at the
scene or at the medical center, and nothing in the record suggests hesitation, question, or protest on
his part to do what the trooper asked him to do. His belated claim is overcome by the circumstances. 
The totality of the circumstances are quite different in this case from the cases relied upon by
appellant where consent to search was held involuntary. For example, in Erdman, when the
defendant gave his consent to take a breath test, he was under arrest; he was told by a trooper that
if he refused the breath test DWI charges would be filed and he would be placed in jail. See Erdman
v. State, 861 S.W.2d 890, 891 (Tex. Crim. App. 1993). Indeed, in the instant case, after evidence
was heard on the motion to suppress, appellant's counsel conceded "Judge, I would agree that there's
no Erdman question here."

 On reconsideration we have determined de novo and hold that the totality of the
circumstances presented by the record show that the State proved by clear and convincing evidence
that appellant's consent to the taking of his blood for analysis was voluntary.

 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Affirmed on Remand

Filed: December 10, 1998

Publish


* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).




level of a defendant's cooperation with the police, (4) the defendant's awareness of his right to
refuse to consent, (5) the defendant's education and intelligence, and (6) the defendant's belief that
no incriminating evidence will be found. See United States v. Brown, 102 F.3d 1390, 1396 (5th
Cir. 1996); United States v. Kelley, 981 F.2d 1464, 1470 (5th Cir. 1993); United States v. Yeagin,
927 S.W.2d 798, 800 (5th Cir. 1991); United States v. Phillips, 664 F.2d 971, 1023-24 (5th Cir.
1981). See also United States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996); United States
v. Sanchez-Valderuten, 11 F.3d 985 (10th Cir. 1993).

 In this case, the totality of the circumstances included a number of factors for
consideration in determining whether appellant voluntarily consented to give a specimen of his
blood: (1) Appellant was not under arrest or in custody when he consented to give a blood
specimen for analysis. Appellant was not arrested until several months later after the blood test
results were obtained. (2) When he gave consent, although not seriously injured, appellant was in
a medical center and not in coercive jail house surroundings. (3) No physical force was used on
appellant and he was cooperative. (4) Appellant was not interrogated by the officer and the officer
did not ask appellant to perform any of the customary field sobriety tests. (5) The officer did not
claim to have, or threaten to obtain, a search warrant. (6) Appellant was given Miranda warnings. 
(7) Appellant makes no claim that he was unaware of his Fourth Amendment rights and there is
nothing to rebut the presumption that he was aware of those rights. (8) There is no claim that
appellant was immature, uneducated, or unsophisticated. (9) It may reasonably be inferred from the
circumstances that appellant was motivated to give his blood for analysis because of a belief it would
show he was not intoxicated. (10) At the time consent was given by appellant, he was not under
arrest and he voiced no concern about the wording of the forms read to him by the officer.

 Appellant's claim that psychological coercion resulting from the wording of the forms
caused him to consent to give his blood for analysis is not supported by any of his conduct at the
scene or at the medical center, and nothing in the record suggests hesitation, question, or protest on
his part to do what the trooper asked him to do. His belated claim is overcome by the circumstances. 
The totality of the circumstances are quite different in this case from the cases relied upon by
appellant where consent to search was held involuntary. For example, in Erdman, when the
defendant gave his consent to take a breath test, he was under arrest; he was told by a trooper that
if he refused the breath test DWI charges would be filed and he would be placed in jail. See Erdman
v. State, 861 S.W.2d 890, 891 (Tex. Crim. App. 1993). Indeed, in the instant case, after evidence
was heard on the motion to suppress, appellant's counsel conceded "Judge, I would agree that there's
no Erdman question here."

 On reconsideration we have determined de novo and hold that the totality of the
circumstances presented by the record show that the State proved by clear and convincing evidence
that appellant's consent to the taking of his blood for analysis was voluntary.

 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Affirmed on Remand

Filed: December 10, 1998

Publish


* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(