TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00160-CR







Patrick Steve Sanchez, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT


NO. 6764, HONORABLE D. V. HAMMOND, JUDGE PRESIDING








 Appellant Patrick Steve Sanchez was charged with the offense of burglary of a
habitation. See Tex. Penal Code Ann. § 30.02(a)(1) (West 1994). Sanchez filed a motion to
suppress evidence of stolen items, claiming they were seized in violation of his constitutional
rights. Following a hearing at which both the arresting officer and appellant testified, the trial
court overruled appellant's motion. Sanchez subsequently entered into a negotiated plea agreement
with the State for a reduced theft charge and was assessed twenty-three months' confinement in
a state jail facility. However, Sanchez reserved his right to appeal the trial court's denial of his
motion to suppress. After conducting a de novo review, we conclude that the trial court erred in
overruling appellant's motion to suppress. We will reverse and remand the cause to the trial
court.



FACTUAL AND PROCEDURAL BACKGROUND


 In a single point of error, appellant claims the trial court abused its discretion in
overruling his motion to suppress. At the suppression hearing, Lampasas County Sheriff's Deputy
Mitchell Martin testified that he had received information from a confidential informant that
Sanchez had been involved in several burglaries in the area and was currently in possession of
some of the stolen property. Deputy Martin went to Sanchez's residence without a warrant and
requested permission to search the residence and surrounding area. Sanchez refused to sign a
search consent form, but gave the deputy his verbal consent to search the residence. In Sanchez's
presence, the deputy noticed some kitchen flatware with a distinctive pattern and some other items
that matched the description of property reported stolen from the home of Glen Oliver. Deputy
Martin did not take possession of any items at that time, but requested that appellant accompany
him to the Sheriff's office for further questioning. Upon arriving at the Sheriff's office, Sanchez
was read the Miranda warnings, questioned, and subsequently arrested for burglary of the Oliver
residence. Deputy Martin's testimony indicates that the questioning took no longer than one hour.

 After placing Sanchez in jail, Deputy Martin returned to Sanchez's residence and
continued to search for stolen items. At the suppression hearing, Deputy Martin testified that he
believed Sanchez's initial verbal consent to search extended to the second search because Sanchez
had not revoked his consent. However, the deputy admitted that he did not inform Sanchez of his
intent to return and search further, and acknowledged that he did not obtain a search warrant even
though there was adequate time to do so and a judge available. While at Sanchez's residence the
second time, Deputy Martin summoned Glen Oliver, who was able to identify some of the stolen
property as his. The stolen property was seized by Deputy Martin and eventually used to negotiate
the plea bargain agreement with Sanchez.

 At the suppression hearing, Sanchez testified that he gave Deputy Martin verbal
consent to search his residence the first time, but that he did not give consent for the second search
that took place while he was in jail. Sanchez stated that he did not revoke his consent because the
subject of another search did not come up, and that he did not even learn about the second search
until "a couple of months later." Deputy Martin admitted that he did not ask Sanchez for his
consent to conduct the second search.

 The State's attorney acknowledged at the hearing that Sanchez's arrest may have
been illegal, but argued that any illegality in the arrest should not taint the second search because
of Sanchez's prior verbal consent. Sanchez's attorney argued that there were two separate
searches, not a continuation of a search, and that Sanchez did not consent to the second warrantless
search. The trial court overruled Sanchez's motion to suppress, and the case was placed on the
jury docket. Sanchez then pleaded guilty to theft in exchange for a reduced jail sentence.


DISCUSSION


 The United States and Texas constitutions protect citizens from unreasonable
searches and seizures. U.S. Const. Amend. IV; Tex. Const. art. I, § 9; see Kolb v. State, 532
S.W.2d 87, 89 (Tex. Crim. App. 1976). A warrantless search or seizure is per se unreasonable,
subject to a few well-defined and limited exceptions. See United States v. Karo, 468 U.S. 705,
717 (1984). One of the specifically established exceptions to the warrant requirement is a search
conducted with consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Kolb, 532
S.W.2d at 89. The protections afforded by the Fourth Amendment and the Texas Constitution
may be waived by an individual voluntarily consenting to a search. See Paprskar v. State, 484
S.W.2d 731, 737 (Tex. Crim. App. 1972). The burden is on the State to show by clear and
convincing evidence that consent was freely given, and that the consent was positive and
unequivocal. See Roth v. State, 917 S.W.2d 292, 300 (Tex. App.--Austin 1995, no pet.).

 Following the lead of the United States Supreme Court, the Texas Court of
Criminal Appeals has held that the amount of deference a reviewing court affords to a trial court's
ruling on a mixed question of law and fact is determined by which judicial actor is in a better
position to decide the issue. See Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1996)
(citing Miller v. Fenton, 474 U.S. 104, 114 (1985)). If the issue involves the credibility of a
witness, thereby making the evaluation of that witness's demeanor important, compelling reasons
exist for allowing the trial court to apply the law to the facts. See id. (citing Miller, 474 U.S. at
114). However, if the issue is whether an officer had probable cause to seize a suspect under the
totality of the circumstances, the trial judge is not in an appreciably better position than the
reviewing court to make that determination. See id. Guzman echoed the United States Supreme
Court's pronouncement that although great weight should be given to the inferences drawn by trial
judges and law enforcement officers, determinations of reasonable suspicion and probable cause
should be reviewed de novo on appeal. See id. (citing Ornelas v. United States, 517 U.S. 690,
699 (1996)). "[T]he legal rules for probable cause and reasonable suspicion acquire content only
through application. Independent review is therefore necessary if appellate courts are to maintain
control of, and to clarify, the legal principles." Guzman, 955 S.W.2d at 87 (quoting Ornelas, 517
U.S. at 697). In an unpublished majority opinion, the Court of Criminal Appeals vacated and
remanded our opinion in Combest v. State, 953 S.W.2d 453 (Tex. App.--Austin 1997), for
reconsideration under Guzman, thereby expanding the de novo standard of appellate review to
consent issues in the search and seizure context. See Combest v. State, No. 1527-97 (Tex. Crim.
App. July 15, 1998) (not designated for publication). Following the Court of Criminal Appeals'
holding in Combest, we now apply de novo review to the consent issue in this case, namely
whether the trial court erred in determining that Sanchez's initial consent to search in his presence
extended to the second search that took place after he was jailed. (1)

 The State argues that the consent given by Sanchez for Deputy Martin's first search
of his home was sufficient for the second search that took place approximately one hour later while
Sanchez was in jail. We disagree. It is undisputed that Sanchez consented to the first search. 
However, the record shows that Sanchez was not told there would be a subsequent search, and he
was not given the opportunity to revoke his previous consent because he had been placed in jail
by Deputy Martin. The record also reflects that Sanchez refused to sign the consent form and only
allowed Deputy Martin to search his residence while in his presence.

 The instant case is distinguishable from other cases where courts have found that
an initial voluntary consent to search extended or carried over to a subsequent search. In Morrison
v. State, 508 S.W.2d 827 (Tex. Crim. App. 1974), the court held that the original consent to
search, given by a third party who exercised control over a suspect's residence, could carry over
to a second search of the residence four hours later. See id. at 829. However, the court
specifically reasoned that the consent carried over because the third party returned with the officer
during the second search. See id. Thus, the presence at a second search of a party who gave
consent for the initial search may imply consent to the second search. In the instant case, appellant
did not accompany Deputy Martin on the second search because he had been jailed and did not
know the search was occurring. Under such circumstances, it can hardly be said that Sanchez
impliedly consented to the second search.

 Hawkins v. State, 968 S.W.2d 382 (Tex. App.--Tyler 1997, pet. denied) is also
distinguishable. At a suppression hearing in that case, police officers testified that they arrived
at Hawkins's apartment in response to a telephone call from Hawkins's live-in girlfriend Minchew
complaining that he had threatened her and her baby with a shotgun and would not let her retrieve
the child from the apartment. The officers testified that when Minchew called, she was extremely
upset and begged them to go with her to get her child. When the officers arrived, Minchew
entered the apartment and they heard her arguing with Hawkins. At that point, the officers entered
and observed Hawkins pointing an illegal sawed-off shotgun at them, which caused them to exit
quickly. Another officer arrived and convinced Hawkins to release Minchew and the baby. Two
hours later, the officers returned with reinforcements and negotiated with Hawkins to surrender. 
During the negotiations, some of the officers were able to see through an open window and
observe Hawkins holding the illegal shotgun. After Hawkins surrendered, the officers entered the
apartment and retrieved the shotgun. See Hawkins, 968 S.W.2d at 383-84.

 The trial court denied Hawkins's motion to suppress evidence of the illegal shotgun. 
On appeal, the State argued that the consent given by Minchew for the first entry into the
apartment carried over to the second entry after Hawkins surrendered. See id. at 384. The court
of appeals noted that although Minchew did not accompany the officers on their return to the
apartment to arrest Hawkins, there was testimony that she called for his arrest, informed the police
that there was a warrant out for his arrest, and pressed charges against him. See id. at 385. 
According to the testimony of the police officers, she did nothing to revoke her consent to enter
the apartment. Therefore, the court held that Minchew's consent carried over to the second entry
into the apartment and that the trial court did not abuse its discretion in denying the motion to
suppress. See id.

 Hawkins is distinguishable from the present case. It was Hawkins's live-in
girlfriend who gave consent for the original entry after Hawkins had threatened her with a
shotgun. She and her baby were later released by Hawkins into police custody and taken to the
police station. Absent a revocation of that consent, it was reasonable for the police officers to
presume that her consent carried over to allow them to retrieve the illegal shotgun after they had
negotiated Hawkins's surrender. In the present case, the original consent was given by appellant
himself; Deputy Martin admitted that he did not ask appellant's girlfriend for her consent when
he returned alone to conduct a second search of appellant's residence. There can be no implied
continuation of consent, as in Hawkins, because here there was no comparable situation where one
of two cohabitants requests the police to enter their residence to intervene in a violent domestic
dispute.

 This is also not a case in which the "exigent circumstances" exception to the
warrant requirement could apply. In Brown v. State, 475 S.W.2d 938 (Tex. Crim. App. 1971),
the court extended the defendant's original consent to search to a second search twelve hours later
when the officers returned with the defendant's uncle to obtain evidence that the defendant had
murdered his parents in the home. After discussing the "exigent circumstances" exception, the
court ruled it was not an illegal search and seizure because it occurred during an investigation into
a pair of unsolved homicides that took place in a rural home approximately fifteen miles from the
sheriff's office. See id. at 949-950. In the case at bar, Deputy Martin was not investigating a
homicide. He admitted that he had time to procure a warrant. Appellant was in jail and unable
to flee, and there was no evidence that the stolen property was about to be removed from his
residence or destroyed. No exigent circumstances were present to justify the warrantless search.

 Deputy Martin testified that he did not obtain consent for the second search of
Sanchez's residence from either Sanchez or his girlfriend; instead, he placed Sanchez in jail and
conducted the second search without a warrant and without consent. Based on these facts, the
State did not meet its burden of proving by clear and convincing evidence that appellant's initial
verbal consent carried over to the second search during which the items at issue were seized. 
Therefore, the trial court erred in admitting evidence from the warrantless search. Sanchez's sole
point of error is sustained.

CONCLUSION


 The judgment of the trial court is reversed and the cause is remanded.



 

 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: December 17, 1998

Publish
1. Although appellant's version of the facts differs from Deputy Martin's in that appellant
claims he was taken to the sheriff's office twice, both before and after the consensual search, this
discrepancy is unrelated to the consent issue in this case and both witnesses agree on the relevant
facts pertaining to the second search. Because our analysis does not turn on the credibility of
either witness, the discrepancy does not affect our decision to apply the de novo standard of review
to this case in light of Combest.



 court
of appeals noted that although Minchew did not accompany the officers on their return to the
apartment to arrest Hawkins, there was testimony that she called for his arrest, informed the police
that there was a warrant out for his arrest, and pressed charges against him. See id. at 385. 
According to the testimony of the police officers, she did nothing to revoke her consent to enter
the apartment. Therefore, the court held that Minchew's consent carried over to the second entry
into the apartment and that the trial court did not abuse its discretion in denying the motion to
suppress. See id.

 Hawkins is distinguishable from the present case. It was Hawkins's live-in
girlfriend who gave consent for the original entry after Hawkins had threatened her with a
shotgun. She and her baby were later released by Hawkins into police custody and taken to the
police station. Absent a revocation of that consent, it was reasonable for the police officers to
presume that her consent carried over to allow them to retrieve the illegal shotgun after they had
negotiated Hawkins's surrender. In the present case, the original consent was given by appellant
himself; Deputy Martin a