Tracy Glenn **GALLUPS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–01–00114–CR.

Court of Appeals of Texas, Dallas.

May 12, 2003.

Lorin M. Subar, Law Office of Lorin M. Subar, Dallas, Roger V. Dickey, McKinney, for appellant.

John Roach, Criminal District Attorney, Manuel Gonzales, McKinney, for the State.

1. The Honorable Chuck Miller, Judge, Texas Court of Criminal Appeals, Retired, sitting by assignment.

Before Chief Justice THOMAS and Justices BRIDGES and MILLER.[1]

## OPINION

Opinion by Justice MILLER.

Appellant Tracy Glenn Gallups was charged by indictment with the felony offense of driving while intoxicated. Gallups filed a pretrial motion to suppress, which the trial judge heard. At the end of the evidentiary hearing on the motion, the trial court denied the motion. Subsequently, Gallups waived his right to trial by jury, pleaded guilty to the offense, and pleaded true to two enhancement paragraphs. The trial court accepted Gallups's pleas, found him guilty, found the enhancement paragraphs true, and sentenced him to twenty-five years in prison. In a single issue, Gallups asserts the trial court erred in overruling his motion to suppress. We affirm.

The testimony elicited by the State at the motion to suppress hearing revealed that on December 8, 1999, a one-vehicle accident occurred in McKinney, Texas. When police arrived, the vehicle's driver was gone. A witness to the accident gave a description of the driver to an officer. A check of the vehicle gave the officer a name, Tracy Gallups, and an address. The address was near, so another officer went there. After entering the residence, the officer arrested Gallups.

On appeal, Gallups maintains the officer's entry into his home was unlawful and, therefore, "[t]he arrest as well as any evidence obtained by the warrantless seizure are tainted and should be suppressed."[2]

2. Gallups does not specify in his brief the evidence to which he is referring. Presumably, he is referring to testimony that he appeared intoxicated when arrested in his home. The arresting officer certainly gave

Specifically, Gallups argues that, under the evidence, the officer entered his home without permission or consent.[3] The State counters that, under the evidence, the officer had consent to enter and, therefore, the trial court correctly overruled Gallups's motion to suppress.

The applicable standard of appellate review of a trial court's decision to overrule a motion to suppress has been clearly set out by the court of criminal appeals. *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). In *Guzman,* the court distinguished between evidentiary rulings, which are reviewed under an abuse of discretion standard, and suppression rulings that involve application of law to factual situations. *See Guzman,* 955 S.W.2d at 89. The latter category of trial court rulings calls for the reviewing court to view the evidence in the light most favorable to the trial court's ruling if the trial court has not itself made findings of fact. *See Carmouche,* 10 S.W.3d at 327– 28. In other words, the reviewing court assumes the trial court made implicit findings of fact supported by the record that buttress the decision to deny the motion to suppress. *See id.* We view the evidence thusly in deference to the axiom that in a suppression hearing, the trial court is the *sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. See State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). Considering the evidence in the light most

favorable to the trial court's ruling is the means by which we meet the requirement that appellate courts give almost total deference to the trial court's determination of historical facts. *See Guzman,* 955 S.W.2d at 89. That done, we then review de novo the trial court's application of the law of search and seizure to those facts. *See id.*

In his brief, Gallups seems to be asking us to make credibility determinations in our review of the trial court's decision to overrule his motion to suppress. The record reflects that three witnesses testified at the hearing on the issue of consent. The State's witness was McKinney police officer Bill Perkins. Gallups called himself and his mother to the stand. The two sides gave notably different testimony on the issue of consent. This evidence must and will be reviewed in the light most favorable to the trial court's ruling. *See id.* We will not redetermine the credibility of the witnesses. *See id.*

The record reveals the following details: Perkins told the trial court that on December 8, 1999, he responded to a radio call from fellow officer Robbie Butler. Butler was investigating a recent one-vehicle accident that occurred around 2:30 p.m. The vehicle's driver was gone when Butler arrived shortly after the accident occurred. A witness described the vehicle's driver to Butler, indicated the driver was intoxicated, and stated that the driver had abandoned the wrecked truck. Butler found an insurance card in the disabled truck from which he learned Gallups's name and address.[4] The address was about three

---

such testimony at the suppression hearing. The State does not take issue with this Court reaching the merits of Gallups's contentions, and, in the spirit of *Young v. State,* we will reach those merits. *See Young v. State,* 8 S.W.3d 656, 666–67 (Tex.Crim.App.2000).

3. Gallups also argues that the officer's entry was not justified under the doctrine of "hot

pursuit." However, the State does not rely on that exception to the warrant requirement. *See generally LaHaye v. State,* 1 S.W.3d 149, 152 (Tex.App.-Texarkana 1999, pet. ref'd).

4. The address on the card matched the address on the truck's registration.

blocks away from the scene of the accident and was in the direction the driver had fled. Over the radio, Butler asked for another officer to go to the address on the insurance card and investigate to see who the missing driver was.

Perkins answered Butler's call and went to the address. Once there, Perkins saw Gallups standing on the other side of a full-length glass storm door. The storm door was in the main entranceway in front of the solid front door, which was wide open. Perkins could see Gallups almost from head to toe. Gallups matched the description gleaned from the accident witness.

The testimony about what happened next conflicts and forms the basis for the dispute over the issue of consent. When the prosecutor asked what happened after Perkins saw Gallups, the following transpired:

Perkins: As I approached the door, I asked him if he'd step outside the door. And instead he motioned for me to come forward, and I pushed the door open.

Prosecutor: How did he do it? Can you describe for the court how he did it?

Perkins: To the best of my recollection, I was standing to the left side of the doorway, and I asked him. And I just reached out and opened the door, and I had to step around and walk through the door as it opened up.

Prosecutor: Did he ever tell you you couldn't come in?

Perkins: No.

Prosecutor: How did he motion for you to come in?

Perkins: He just kind of indicated (demonstrating).

Prosecutor: That meant open the door? For purposes of the record, you have your hand being extended out and coming back toward you.

Perkins: Yes.

After a short conversation with Gallups and his mother, who was also present, Perkins arrested Gallups for driving while intoxicated.

On cross-examination, Perkins reiterated that he was invited in by Gallups's hand gesture. His testimony on cross was consistent with his testimony on direct, except that his report indicated that he had knocked on the door and Perkins did not remember doing that.

After the State rested, Gallups called his mother to the stand. She verified there was a glass storm door on the front of her house and that the solid wooden front door was open. She told the court that Perkins opened the storm door and entered the house without knocking. Her son was out of sight of the front door and therefore not in a position to motion the officer in. According to Ms. Gallups, no one gave Perkins any kind of permission, verbal or physical, to enter the house. Gallups then took the stand and testified consistently with his mother's testimony.

Considering the evidence in the light most favorable to the trial court's implied decision that Perkins's entrance into Gallups's home was consensual, we conclude the trial court implicitly accepted Perkins's testimony on the issue and disregarded both Gallups's and his mother's testimony to the contrary. Thus, we are given a scenario wherein a police officer approached the glass front door of a residence, requested that an occupant of the residence come outside, observed the occupant make a hand gesture, and then entered the residence.

 When police enter a residence without consent of its residents, that entry constitutes a search. *See McNairy v.*

*State,* 835 S.W.2d 101, 106 (Tex.Crim.App. 1991) (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Generally speaking, searches or seizures must occur pursuant to a warrant based on probable cause. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).[5] Indeed, physical warrantless entry of the home by government agents is the chief evil against which the wording of the Fourth Amendment is directed. *See United States v. United States Dist. Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Janicek v. State,* 634 S.W.2d 687, 690 (Tex. Crim.App. [Panel Op.] 1982).

▆▆▆ A recognized exception to the warrant requirement is a search conducted pursuant to consent. *See Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041; *Juarez v. State,* 758 S.W.2d 772, 776 (Tex.Crim.App.1988); *Dawson v. State,* 868 S.W.2d 363, 368 (Tex. App.-Dallas 1993, pet. ref'd). In order for this exception to validate a warrantless search, the State must show by clear and convincing evidence that consent was freely and voluntarily given. *See State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim. App.1997); *Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App.1985). Whether a consent to search was in fact voluntary is a question of fact determined from the totality of the circumstances. *See Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041; *Fontenot v. State,* 792 S.W.2d 250, 253 (Tex.App.-Dallas 1990, no pet.).

▆▆▆ How the totality of the circumstances can lead to different conclusions on the issue of consent can be illustrated by a review of some of the many appellate cases

written on the point. In *Frierson,* we reviewed the entry of police into a residence at the invitation of the defendant resident's son. *Frierson v. State,* 839 S.W.2d 841, 851 (Tex.App.-Dallas 1992, pet. ref'd.). Initially, we reiterated factors that are sometimes relevant to the issue of consent, including:

(1) whether, and to what extent, officers exhibited a show of force, including a display of weapons;

(2) whether the actions of the officers could be classified as flagrant misconduct;

(3) whether the police threatened to obtain a search warrant if the detainee did not acquiesce, or whether the police claimed a right to search;

(4) whether police first gave appellant his *Miranda*[6] warnings;

(5) whether the arrest was made in order to obtain consent;

(6) whether appellant knew that he could refuse to allow a search;

(7) whether consent was offered by appellant or was in response to police request;

(8) appellant's education, intelligence, and physical condition.

*Id.* We then noted that the son invited the officers into the residence in front of his defendant father. *Id.* Relying heavily on the fact that the defendant neither did nor said anything indicating the child did not have the right to give consent to the police officer, we concluded the State had met its burden to show by clear and convincing evidence that consent was freely and vol-

---

**5.** Additionally, and germane to this case, the code of criminal procedure provides that an officer may not enter a residence and make a warrantless arrest unless one of two situations is present: either a person who resides in the residence consents to the entry, or exigent circumstances exist. *See* Tex.Code Crim. Proc. Ann. art. 14.05 (Vernon Supp. 2003).

**6.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

untarily given. *See id.* Thus, by his inaction, the defendant gave consent.

In *Reyes–Perez v. State,* the Corpus Christi Court of appeals held that a defendant's hand gesture was insufficient to prove consent by clear and convincing evidence. *Reyes–Perez v. State,* 45 S.W.3d 312, 319 (Tex.App.-Corpus Christi 2001, pet. ref'd). *Reyes–Perez* involved a traffic stop in which the Spanish-speaking defendant driver and the English-speaking police officer communicated almost solely by hand gestures. *Id.* at 316–19. A search of the car battery revealed cocaine. The officer testified that the defendant consented to a search of the battery by gesture.

In its opinion in *Reyes–Perez,* the Corpus Christi court set out the law of consent, saying:

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. Although the federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to prove by clear and convincing evidence that consent to search was freely given. To be valid, a consent to search must be positive and unequivocal, and must not be the product of duress or coercion, either express or implied. Voluntary consent is not shown by a mere acquiescence to a claim of lawful authority. The trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether consent was given voluntarily. The extent of a search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object.

*Id.* at 315 (citations omitted). After reviewing the testimony, the court *summarily* concluded that:

[V]iewing the facts in the light most favorable to the trial court's ruling, we hold that the officers' testimony that they communicated with appellant solely by "hand gestures" is insufficient to constitute clear and convincing evidence of appellant's positive and unequivocal consent to the search. Accordingly, we hold that the trial court erred in denying appellant's motion to suppress evidence. *Id.* at 319.

In *Roth v. State,* the Austin Court of Appeals was confronted with the same argument the State makes here. *See Roth v. State,* 917 S.W.2d 292, 300 (Tex.App.-Austin 1995, no pet.). In *Roth,* the police officer testified that the resident of the home "looked as though" he wanted the officers to come in or did not "mind" if they did. *Id.* at 297–98. The resident neither requested nor invited the officer to enter, but the front door swung open to afford the officer entry. *Id.* The Austin court held the State had failed to discharge its burden to show by clear and convincing evidence that consent was freely and voluntarily given. *Id.* at 300.

In this case, Perkins asked Gallups to come outside his residence. The request was made through a closed glass storm door. In response to this request, Gallups extended his hand outward and then drew it back toward himself. Perkins took this as a request by Gallups for Perkins to come inside in lieu of Gallups going outside. Indeed, in our culture such a gesture done in the context of the encounter between Perkins and Gallups commonly means just what Perkins interpreted it to mean. More than consent, Gallups's gesture, again, in context, amounted to a request.[7]

**7.** Older, pre-*McNairy* cases held that where a

resident requests the police to enter his or her

▮▮▮▮ Unlike *Reyes–Perez*, there is no evidence in this case of a cultural or language disparity between Gallups and Perkins. Unlike *Roth* and *Frierson*, there was an affirmative communication to enter.

home, there is no issue of consent in the case, thus eliminating the requirement that the State show that consent was knowing and intelligent. *See Bell v. State*, 676 S.W.2d 219, 220 (Tex.App.-Corpus Christi 1984, pet ref'd).

8. The dissent argues that Perkins's arrest of Gallups was illegal because entry into the home by the police was not consensual and, if it was, Gallups' subsequent arrest violated article 14.05 of the code of criminal procedure because the arrest occurred inside his home. *See* Tex.Code Crim. Proc. Ann. art. 14.05 (Vernon Supp.2003). The consent issue has been discussed in the body of the majority opinion; thus, the issue remaining is the 14.05 issue. In Texas, warrantless arrests are authorized only if (1) there is probable cause to arrest an individual, and (2) the arrest falls within one of the exceptions for warrantless arrest set forth in chapter fourteen of the code of criminal procedure. *See Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989). Thus, even if Perkins had probable cause to arrest Gallups, the State was still required to show a chapter fourteen exception to justify a warrantless arrest. At the time of this offense, article 14.05 provided in relevant part:

> In each case enumerated [in articles 14.01–04] where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make the arrest unless:
>
> (1) a person who resides in the residence consents to the entry....

*See* Tex.Code Crim. Proc. Ann. art. 14.05 (Vernon Supp.2003).

Article 14.03, pertinent here, authorizes an arrest without warrant of "persons found in suspicious places and under circumstances which reasonably show that the persons have been guilty of some ... offense under Section 49.02, Penal Code...." *See* Tex.Code Crim. Proc. Ann. art. 14.03(a)(1) (Vernon Supp. 2003). Section 49.02 of the penal code states that "[a] person commits an offense if the

Taken in context, we conclude the hand gesture by Gallups to Perkins and Perkins's testimony constituted sufficient evidence from the State to prove consent to enter by clear and convincing evidence.[8]

person appears in a public place while intoxicated to the degree that the person may endanger the person or another." *See* Tex. Pen. Code Ann. § 49.02(a) (Vernon 2003). Thus, Gallups's arrest inside his home was authorized if Perkins (1) had consent pursuant to article 14.05, and (2) if the circumstances reasonably showed probable cause that Gallups had been guilty of public intoxication pursuant to article 14.03 and section 49.02. It is immaterial that Perkins actually arrested Gallups for driving while intoxicated. *See Peddicord v. State*, 942 S.W.2d 100, 109–10 (Tex.App.-Amarillo 1997, no pet.).

Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been committed. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Hughes v. State*, 878 S.W.2d 142, 154 (Tex.Crim.App.1992) (op. on reh'g). Further, in determining whether probable cause existed for an arrest, we examine the cumulative information known to all the officers who cooperated in the arrest. *See United States v. Hensley*, 469 U.S. 221, 233, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Muniz v. State*, 851 S.W.2d 238, 251 (Tex.Crim.App.1993).

In this case, at the time of Gallups's arrest, the cumulative knowledge possessed by the police, namely Butler and Perkins, was that an intoxicated man matching Gallups's description had driven and wrecked a motor vehicle in a public place, the man had fled on foot, evidence in the vehicle linked the man to Gallups's nearby address, and that all of these events were recent in time. We believe these facts were sufficient to warrant a person of reasonable caution, relying on those facts, to believe Gallups had committed the offense of public intoxication. Therefore, we do not agree with the dissent's conclusion that Gallups's arrest violated chapter 14 of the code of criminal procedure. Had Gallups better developed the 14.05 claim in his brief, we would have more thoroughly addressed the issue of his arrest in the body of the majority opinion.

We resolve Gallups's lone issue against him.

We affirm the trial court's judgment.

BRIDGES, J., dissenting.

Dissenting Opinion by Justice BRIDGES.

I respectfully dissent. Because I conclude the State did not present clear and convincing evidence that Perkins properly arrested appellant without a warrant in his home or that appellant consented to Perkins' entry into appellant's residence, I would reverse and remand this cause for further proceedings.

As discussed by the majority, I must give almost total deference to the trial court's determination of historical facts and consider the evidence in the light most favorable to the trial court's ruling. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). However, I would review de novo the trial court's application of the law of search and seizure and the law authorizing arrest without a warrant to those facts. *See id.* Further, appellant challenges the constitutionality of his arrest both under the Texas Constitution and articles 14.01 through 14.05 of the code of criminal procedure. *See* Tex. Const. art. I, § 9; Tex.Code Crim. Proc. Ann. arts. 14.01–14.05 (Vernon 1977 & Supp.2003). Under appellant's state constitutional argument, the proper inquiry is "the reasonableness of the search or seizure under the totality of the circumstances." *Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App.1998). As to appellant's statutory argument, the proper inquiry is (1) whether there was probable cause with respect to that individual and (2) whether the arrest fell within one of the statutory exceptions. *Beverly v. State*, 792 S.W.2d 103, 104–05 (Tex.Crim.App. 1990).

At the hearing on appellant's motion to suppress, McKinney police officer Robbie Butler testified he arrived at a one-vehicle accident scene on December 8, 1999. A 1989 Dodge Ram Charger had run into a telephone pole, but the driver was not present. A witness, Ray Ramos, said he had seen the accident and described the driver as a white male with short brown hair wearing a gray and blue sweatshirt and blue jeans. According to Ramos, the driver had a white spot in the front of his hair, was bleeding from the mouth, and smelled of alcohol. Ramos said the driver had run north and turned east through an alleyway.

In the truck's glove compartment, Butler found an insurance card bearing appellant's name and address. Appellant's address indicated a location three blocks away in the same direction as Ramos said the driver had gone. Butler ran a search to determine to whom the truck belonged, and once again it appeared the truck belonged to appellant. Butler contacted Perkins, who went to appellant's residence. Perkins approached the glass front door of the residence, requested that appellant come outside, observed appellant make a hand gesture, entered the residence, and arrested appellant. Perkins testified that, as he stood outside appellant's door, "[Appellant] motioned for [Perkins] to come forward, and [Perkins] pushed the door open." In response to the prosecutor's questioning, Perkins answered that appellant did not tell Perkins he could not come inside. Also, when the prosecutor asked how appellant motioned for Perkins to come in, Perkins responded "He just kind of indicated." The prosecutor then asked Perkins, "That meant open the door? For purposes of the record, you have your hand being extended out and coming back toward you." Perkins answered affirmatively. After Perkins arrested appellant,

he brought him back to the scene of the accident, but Ramos had departed.

The majority addresses the issue of whether appellant consented to Perkins' entry of appellant's residence. However, because this case involves appellant's arrest without a warrant inside his residence, I believe the proper inquiry is whether appellant's consent authorized Perkins to arrest him without a warrant pursuant to article 14.05 of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 14.05 (Vernon Supp.2003). Article 14.05 provides that, in each "case enumerated where arrests may lawfully be made without a warrant," a police officer making an arrest without a warrant may not enter a residence to make the arrest unless a person who resides in the residence consents to the entry or exigent circumstances require the officer to enter the residence without a warrant and without consent. *Id.* DWI is not a "case enumerated" in articles 14.01 through 14.04 of the code of criminal procedure. *See id.* arts. 14.01–.04. Thus, whether or not appellant consented to Perkins' entry, such consent did not authorize Perkins to arrest appellant without a warrant inside his residence for the offense of DWI. *See id.* art. 14.05.

Even if appellant consented to a search, however, I would not conclude appellant's consent to Perkins' entry into his home authorized Perkins to arrest him there. The cases cited by the majority relevant to searches conducted pursuant to consent involve searches for evidence or drugs outside the home or the discovery of drugs inside the home. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 220, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (search of car for stolen checks); *State v. Ibarra,* 953 S.W.2d 242, 243 (Tex.Crim.App.1997) (search of car for drugs); *Juarez v. State,* 758 S.W.2d 772, 774 (Tex.Crim.App.1988) (search of car for drugs); *Meeks v. State,* 692 S.W.2d 504, 506–07 (Tex.Crim.App.1985) (search of car for drugs); *Dawson v. State,* 868 S.W.2d 363, 366 (Tex.App.-Dallas 1993, pet. ref'd) (search of locker for drugs); *Fontenot v. State,* 792 S.W.2d 250, 253 (Tex.App.-Dallas 1990, no pet.) (search of motel bathroom for possible armed individual revealed drugs in plain view). In contrast, Perkins discovered only appellant himself inside the residence. While appellant may have appeared intoxicated, it is not an offense to become intoxicated inside one's own residence.

*Welsh v. Wisconsin,* 466 U.S. 740, 742, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), involved a situation very similar to the facts of this case. In *Welsh,* a single witness saw Welsh driving erratically, swerving off the road, and stopping in an open field. Welsh left the scene before police arrived, but the witness gave police Welsh's description and told them Welsh appeared either very inebriated or very sick. Police checked the vehicle's registration and determined Welsh's identity and address. Without securing a warrant, police went to Welsh's residence and gained entry into the house when Welsh's stepdaughter answered the door.[1] The police found Welsh in bed and arrested him for DWI. Under these facts, the court in *Welsh* reasoned Welsh's arrest was prohibited by the special protection provided an individual in his home and was, therefore, invalid. *Id.* at 754, 104 S.Ct. 2091. The court also noted that DWI was a misdemeanor, not a felony, and most of the courts that had addressed the issue refused to permit warrantless home arrests for nonfelonious crimes. *Id.* at 752, 104 S.Ct. 2091.

1. Because of the procedural posture of the case, the court in *Welsh* assumed there was no valid consent to enter Welsh's home. *Id.* at 743 n. 1, 104 S.Ct. 2091.

Unlike the cases involving warrantless searches for drugs, the police officer in this case came into appellant's residence and did not find any drugs or other contraband which would constitute an offense. Nevertheless, the officer, without a warrant, arrested appellant for driving while intoxicated, a misdemeanor offense not committed within the officer's view. *See* TEX. PEN.CODE ANN. § 49.04(b) (Vernon 2003) (DWI first offense is Class B misdemeanor). As in *Welsh,* I would conclude appellant's arrest under these circumstances was prohibited, and the trial court erred in denying appellant's motion to suppress. *See Welsh,* 466 U.S. at 754, 104 S.Ct. 2091.

Further, even assuming that all Perkins needed to arrest appellant without a warrant was appellant's consent to enter his residence, I disagree that the State has shown appellant gave such consent. The majority correctly states that the State must prove by clear and convincing evidence that consent to enter a residence is freely given in order to establish an exception to the requirement that police obtain a warrant before conducting a search. *See Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000). I do not agree the State met its burden through Perkins' testimony that appellant "motioned for [Perkins] to come forward," "just kind of indicated," and made some unspecified hand gesture. *See Roth v. State,* 917 S.W.2d 292, 300 (Tex.App.-Austin 1995, no pet.) (no clear and convincing evidence of consent where appellant "looked as though" he wanted officers to follow into his residence or did not "mind" if they did); *Green v. State,* 666 S.W.2d 291, 293 (Tex. App.-Houston [14th Dist.] 1984, no pet.) (no waiver of constitutional immunity inferred from singular act of appellant opening her front door). We still give deference to the idea that "a man's house is his castle." *Newman v. State,* 58 Tex.Crim. 443, 126 S.W. 578, 579 (1910).

Notably, Perkins arrived at the accident scene at approximately 2:46 p.m. on Wednesday, December 8, 1999, and there was no testimony showing why an arrest warrant could not have been secured. Further, no other exception to the warrant requirement applied in this case. Perkins was not in "hot pursuit" of appellant because there was no immediate or continuous pursuit of appellant from the scene of the crime. *See Welsh,* 466 U.S. at 753, 104 S.Ct. 2091. Because appellant had arrived home and had abandoned his vehicle at the scene of the accident, there was little remaining threat to public safety. *See id.* Appellant was not intoxicated in public. *See* TEX. PEN.CODE ANN. § 49.02(a) (Vernon 2003); TEX.CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp.2003) (among other things, peace officer outside his jurisdiction may arrest without warrant person publicly intoxicated within officer's presence or view). Though Perkins could smell alcohol on appellant, appellant committed no offense within Perkins' view. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01(a) (Vernon 1977) (authorizing warrantless arrest of offender committing offense within peace officer's presence or view). In short, I would conclude that the trial court erred in overruling appellant's motion to suppress because no circumstances were present that would have authorized Perkins to arrest appellant without a warrant in his home.

Finding error, I would conduct a harm analysis to determine whether the error calls for reversal of the judgment. *See* TEX.R.APP. P. 44.2. Because the error is constitutional, I would reverse unless I determined beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX. R.APP. P. 44.2(a). Butler and Perkins were

the State's only witnesses at the hearing on appellant's motion to suppress. At the time Perkins entered appellant's house, all Perkins knew was that appellant's truck was wrecked, and appellant matched the description of the driver. Only after Perkins entered appellant's residence did he smell alcohol on appellant and notice appellant's speech was slurred before arresting him for DWI. Based on this record, I could not conclude beyond a reasonable doubt that the evidence obtained by Perkins after he entered appellant's residence did not contribute to appellant's conviction. *See* TEX.R.APP. P. 44.2(a).

Accordingly, I would reverse and remand this cause for further proceedings.