IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-897-03






TRACY GLENN GALLUPS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


 DALLAS COUNTY






 Hervey, J., delivered the opinion of the Court in which Womack,
Keasler, Holcomb and Cochran, JJ., joined. Price, J., filed a concurring opinion. 
Meyers and Johnson, JJ., concurred. Keller, PJ., dissented.



O P I N I O N 




 In this case, appellant was convicted of a felony driving while intoxicated offense. He
challenges the legality of his warrantless home arrest. We decide that this arrest did not violate state
law.

 The record reflects that appellant filed a motion to suppress, challenging the legality of his
warrantless home arrest. Appellant claimed in his motion to suppress that this arrest was illegal
under state law solely because it did not meet the exception to the warrant requirement set out in
Article 14.04, Tex. Code Crim. Proc., which provides:

 Where it is shown by satisfactory proof to a peace officer, upon the representation of
a credible person, that a felony has been committed, and that the offender is about to
escape, so that there is no time to procure a warrant, such peace officer may, without
warrant, pursue and arrest the accused.


 Appellant claimed at the beginning of the suppression hearing, however, that the police
"entry into [appellant's] home, is what's at question, and the subsequent arrest that took place there." 
The issue of whether appellant consented to the police entry into his home (and not whether he was
about to escape) was the main issue litigated at the suppression hearing. (1)

 The evidence presented at the suppression hearing shows that the police had probable cause
to believe that appellant was intoxicated when in the middle of the afternoon appellant wrecked his
truck, abandoned it, and "bleeding from the mouth" walked home, which was a short distance away. 
See Gallups v. State, 104 S.W.3d 361, 363-65 (Tex.App.-Dallas 2003). Very soon thereafter, a
police officer went to appellant's home to investigate. See id. This officer testified that, while
outside, he saw appellant with blood around his mouth standing behind a full-length glass storm door
and that appellant eventually motioned for the officer to come inside. See id.

 Q. [PROSECUTION]: Officer, after you exited the vehicle and started walking up
to the house and saw [appellant], what happened next? 

 

 A. [OFFICER]: As I approached the door, I asked him if he'd step outside the door. 
And instead he motioned for me to come forward, and I pushed the door open.


 Q. How did he do it? Can you describe for the court how he did it?


 A. To the best of my recollection, I was standing to the left side of the doorway, and
I asked him. And I just reached out and opened the door, and I had to step around
and walk around the door as it opened up.


 Q. Did he ever tell you you couldn't come in?


 A. No.


 Q. How did he motion for you to come in?


 A. He just kind of indicated (demonstrating).


 Q. That meant open the door?


 For purposes of the record, you have your hand being extended out and coming back
toward you.


 A. Yes.

 

 The officer went inside appellant's home and arrested him shortly after corroborating other
information he had that appellant was intoxicated and was the driver of the wrecked truck. See id. 
Appellant testified at the suppression hearing and denied that he invited the officer to come inside
his home. See id. Appellant claimed on direct examination that the officer just walked inside his
home and asked him if he had been driving his truck to which appellant replied that he had not.

 Q. [DEFENSE]: Were you present when Officer Perkins arrived at your home?


 A. [APPELLANT]: Yes.


 Q. Where were you in the home?


 A. I was sitting on the couch next to my mother.


 Q. All right. Sitting on the couch. Could you see the front door where you were
seated?


 A. I could see the wooden door.


 Q. But could someone on the outside of that door necessarily see you?


 A. No.


 Q. All right. When Officer Perkins arrived, were you standing in that glass doorway?


 A. No, sir.


 Q. Did you open the door for Officer Perkins?


 A. No, sir.


 Q. Did you make any motions towards Officer Perkins to invite him into your home?


 A. No, sir.


 Q. When was the first time that you physically saw Officer Perkins at your house?


 A. He stepped into the doorway, and when he did, he seen me and asked me to come
outside and I refused.


 Q. You told him no?


 A. Yes.


 Q. All right. Did you have any other conversations with Officer Perkins?


 A. Yes. He walked over to me where I was at and asked me if I was driving a vehicle
up the street, and I told him, no, I wasn't; that she might have been, and he asked my
mother if she was driving.


 Appellant later contradicted himself on cross-examination when he testified that it took him
five minutes to walk from his wrecked truck to his home.

 Q. [PROSECUTION]: Now, one of the questions [defense counsel] asked you was
whether or not you think the Officer had time to go-talk to the constable or talk to
a magistrate before coming to your house, and you said, well, I had enough time. 
How long did it take you to get from the truck to your house?


 [APPELLANT]: Do I have to answer that?


 [DEFENSE COUNSEL]: Answer his question.


 A. [APPELLANT]: Probably five minutes.


 Q. [PROSECUTION]: It takes you five minutes to go from your truck over on
College Street to your house on Leland; is that right?


 A. Yes.


 Immediately following the suppression hearing, the trial court denied appellant's motion to
suppress without specifying its reasons for doing so. On direct appeal, appellant claimed that his
warrantless home arrest was "tainted" because the police entry into his home was illegal under state
law. See Gallups, 104 S.W.3d at 363. In a 2-1 decision, the Court of Appeals rejected this claim. 
See id. Apparently applying the well-settled rule that an appellate court can affirm a trial court's
decision if it is correct on any theory of law applicable to the case, (2) the Court of Appeals decided that
appellant's warrantless home arrest met the exceptions to the warrant requirement set out in Article
14.05(1) and Article 14.03(a)(1), Tex. Code Crim. Proc. See Gallups, 104 S.W.3d at 368 n.8. (3)

 We exercised our discretionary authority to review this decision. On discretionary review,
appellant claims that his warrantless home arrest violated state and federal constitutional law and
was also not authorized by any provision in Chapter 14 of the Texas Code of Criminal Procedure. 
The grounds upon which we granted discretionary review state:

 1) Petitioner's arrest in his residence was in violation of the Tex. Code Crim. Proc.
Art. 14.01-14.05.


 2) Petitioner's arrest in his residence was in violation of Tex. Const. art. I, § 9.


 3) Petitioner's arrest in his residence was in violation of U.S. Const., Amend. IV.


 4) The error committed by the trial court contributed to Petitioner's conviction.


 Appellant's constitutional claims (grounds two and three) were not raised in the trial court
or in the Court of Appeals which did not address these claims either. We, therefore, exercise our
discretion to dismiss them as improvidently granted. See Leday v. State, 983 S.W.2d 713, 714, 725
(Tex.Cr.App. 1998) (significant decision addressing issue not raised by either party on discretionary
review) and at 730 (McCormick, P.J., dissenting) (this Court has discretion to address issues not
raised on discretionary review); but see Arline, 721 S.W.2d at 353.

 We decide that appellant's warrantless home arrest was authorized by Article 14.05(1) which
provides:

 In each case enumerated where arrests may be lawfully made without warrant, the
officer or person making the arrest is justified in adopting all measures which he
might adopt in cases of arrest under warrant, except that an officer making an arrest
without a warrant may not enter a residence to make the arrest[ (4)] unless:


 (1) a person who resides in the residence consents to the entry ...


 First we address whether the record supports a finding that appellant consented to the police
entry into his home. See Reyes v. State, 741 S.W.2d 414, 430 (Tex.Cr.App. 1987) (issue of whether
consent to search was valid is "a question of fact to be determined from the totality of the
circumstances"); see also Guzman v. State, 955 S.W.2d 85, 87-89 (Tex.Cr.App. 1997) (setting out
appellate standards of review of trial court's rulings on questions of fact and questions of law). The
dissenting opinion in the Court of Appeals asserts that the prosecution did not meet its burden to
prove by clear and convincing evidence that appellant consented to the police entry into his home. 
See Gallups, 104 S.W.3d at 371 (Bridges, J., dissenting). This dissenting opinion asserts that the
prosecution did not meet this burden with the officer's testimony that appellant "motioned for [the
officer] to come forward" and "just kind of indicated" and with the other evidence that the dissenting
opinion characterized as "some unspecified hand gesture" by appellant. See id.

 This, however, does not take into account the other evidence from the officer demonstrating
how appellant motioned for him not only to "come forward" but also to "come in." And, the
evidence does not show just "some unspecified hand gesture." The evidence shows appellant's
"hand being extended out and coming back toward him." (5) These facts also distinguish this case from
the cases cited in the dissenting opinion. See id. (6) On this record, the trial court was in the best
position to decide whether appellant consented to the police entry into his home. See Guzman, 955
S.W.2d at 87 (standard of appellate review often is determined by which judicial actor is in a better
position to decide the issue).

 Having determined that the record supports a finding that appellant consented to the police
entry into his home, the next issue under Article 14.05 is whether appellant's warrantless arrest falls
within another provision in Chapter 14 of the Texas Code of Criminal Procedure "enumerat[ing]
where arrests may be lawfully made without a warrant." And, we decide that appellant's warrantless
arrest falls within Article 14.03(a)(1) which, in relevant part, provides:

 (a) Any peace officer may arrest, without warrant:


 (1) persons found in suspicious places and under circumstances which
reasonably show that such persons have been guilty of some ... breach of the
peace ... 


 We have held that driving while intoxicated is a breach of the peace. See Romo v. State, 577
S.W.2d 251, 253 (Tex.Cr.App. 1979). And, in Dyar v. State, we held that a hospital, where the
defendant was arrested for driving while intoxicated soon after he was transported there after an
accident, was a "suspicious place" under Article 14.03(a)(1). See Dyar v. State, 125 S.W.3d 460,
468 (Tex.Cr.App. 2003). Similarly, under the facts of this case, appellant's home, where he was
arrested for driving while intoxicated soon after he walked there after abandoning his wrecked truck
at the scene of an accident, was a "suspicious place" under Article 14.03(a)(1) and under this Court's
reasoning in Dyar.

 Article 14.03(a)(1)'s additional requirement of the existence of circumstances showing that
persons like appellant have been guilty of some breach of the peace, and Article 14.05(a)(1)'s
requirement that someone who lives in the home consent to the police entry into the home, which
also must be satisfied for an arrest to be valid under state law, are more protective than the
heightened protections that the Fourth Amendment already provides against physical entry into a
person's home. See generally Welsh,v. Wisconsin, 466 U.S. 740 (1984). Thus, deciding, under these
circumstances, that a home can meet the "suspicious place" requirement of Article 14.03(a)(1) is not
inconsistent with these heightened privacy protections under state and federal constitutional law. 
In other words, the circumstances surrounding appellant's warrantless home arrest raised a
reasonable belief that appellant had committed a breach of the peace and that exigent circumstances
(the need to ascertain appellant's blood-alcohol level) existed to justify appellant's immediate arrest. 
See Dyar, 125 S.W.3d at 468-71 (Cochran, J., concurring) ("suspicious place" provision in Article
14.03(a)(1) should be analyzed under the organizational principle of exigent circumstances and any
"place" may become suspicious when a person at that location and the accompanying circumstances
raise a reasonable belief that the person has committed a crime and exigent circumstances call for
immediate action or detention by the police); cf. Welsh, 466 U.S. at 753-54 (exigent circumstance
of need to ascertain the defendant's blood-alcohol level not sufficient to justify the defendant's
warrantless home arrest for drunk driving because state law defined this offense as a "noncriminal,
civil forfeiture offense for which no imprisonment [was] possible"). (7)

 Our decision in this case does not give the police carte blanche authority to unilaterally make
warrantless home arrests. Our state statutes strike a proper balance between the competing interests
of privacy and legitimate police investigation of crimes that constitute a breach of the peace. 

 Our disposition of ground one makes it unnecessary to address ground four, which we also
dismiss. The judgment of the Court of Appeals is affirmed.


 Hervey, J.



Filed: December 8, 2004

Publish

 
1. It is, therefore, clear that whether appellant consented to the police entry into his home was
raised and preserved in the trial court. See Article 14.05(1), Tex. Code Crim. Proc., (police may
not enter home to make warrantless home arrest unless a person who resides in the home consents
to the entry). The concurring opinion claims that the evidence presented at the suppression hearing
could have been relevant to other claims under the federal and state constitutions. Appellant,
however, raised no constitutional claims in the trial court. The only claim raised and litigated at the
suppression hearing was whether appellant consented to the police entry into his home. And, no
authority exists to support the proposition that we may not look to the issue actually litigated at a
suppression hearing to determine what issues and claims were preserved.
2. See State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Cr.App. 2000).
3. With respect to the issue of whether this Court should address the Article 14.05(1) issue, it
is not dispositive that appellant may not have preserved this issue in the trial court (but see footnote
1) since the Court of Appeals properly addressed it under Ross, 32 S.W.3d at 855-56, and we granted
discretionary review on it. See Arline v. State, 721 S.W.2d 348, 353 (Tex.Cr.App. 1986) (this
Court's "review is limited to those points of error decided by the courts of appeals, included in
petitions for discretionary review and granted as grounds for review"). In addition, the legality of
appellant's warrantless home arrest cannot be intelligently resolved without addressing Article
14.05(1) which expressly applies to home arrests. See State v. Brabson, 976 S.W.2d 182, 200
(Tex.Cr.App. 1998) (McCormick, P.J., concurring) (discretionary review courts may appropriately
decide all questions of law predicate to an intelligent resolution of the issue upon which discretionary
review is granted); see also Cuyler v. Sullivan, 446 U.S. 335, 342 n.6 (1980); Vance v. Terrazas, 444
U.S. 252, 258 (1980). Deciding that appellant's warrantless home arrest is legal solely because it
meets the Article 14.03(a)(1) exception to the warrant requirement could leave the police with the
impression that warrantless home arrests are legal under state law even though these arrests do not
comply with Article 14.05's heightened privacy protections. 
4. In this case, the record does not clearly reflect whether the arresting officer entered
appellant's home "to make the arrest." It appears that the officer may have entered the home for
investigative purposes after which the decision "to make the arrest" was made. We will assume,
however, that the officer entered appellant's home "to make the arrest." 
5. Q. [PROSECUTION]: How did [appellant] motion for you to come in?


 A. [OFFICER]: He just kind of indicated (demonstrating).


 Q. That meant open the door?


 For purposes of the record, you have your hand being extended out and coming back
toward you.
6. See Roth v. State, 917 S.W.2d 292, 300 (Tex.App.-Austin 1995, no pet.) (no clear and
convincing evidence of consent where the defendant "looked as though" he wanted the police to
follow him into his residence); Green v. State, 666 S.W.2d 291, 293 (Tex.App.-Houston [14th Dist.]
1984, no pet.) (no consent from singular act of the defendant opening her front door).
7. Welsh decided that a nighttime, warrantless home arrest of a defendant for drunk driving
shortly after he ran his car off the road and walked home violated the Fourth Amendment because
Wisconsin law defined a first drunk-driving offense as a minor, nonjailable civil violation. See
Welsh, 466 U.S. at 743-48, 753-55. Our state law, however, defines a first drunk driving offense as
a jailable criminal offense. See § 49.04(b), Tex.Pen.Code. (first DWI offense is Class B
misdemeanor with a minimum term of confinement of 72 hours); § 12.22, Tex.Pen.Code
(maximum punishment for Class B misdemeanor is 180 days in jail and a $2,000 fine). Therefore,
to the extent that Welsh has any bearing on what constitutes exigent circumstances under state law,
it would not foreclose deciding that the need to ascertain appellant's blood-alcohol level was an
exigent circumstance justifying his warrantless home arrest. Of course, we express no opinion on
whether appellant's warrantless home arrest violated the Fourth Amendment.