

**NUMBER 13-22-00563-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**JORGE ROCHA JR.,**                                                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                                  **Appellee.**

---

**On appeal from the 139th District Court
of Hidalgo County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Chief Justice Contreras**

Appellant Jorge Rocha Jr. appeals his conviction for possession of a controlled substance in the amount of four grams or more but less than two hundred grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). The jury found Rocha guilty of the offense, and, after finding an enhancement paragraph true,

assessed his sentence at ten years' imprisonment. By two issues, Rocha argues that (1) the evidence adduced at trial was legally insufficient to support the jury's guilty verdict, and (2) his trial counsel rendered ineffective assistance by failing to object to the warrantless entry of his home to secure his arrest. We affirm.

## I.  BACKGROUND

At approximately 7:40 a.m. on June 27, 2021, Officer Arnoldo Villarreal of the Mission Police Department responded to a hit-and-run accident in an alleyway behind a small duplex apartment. Officer Villarreal testified that he arrived on scene to find an abandoned Mustang vehicle and a ruptured water line that was pouring water into the street. The vehicle's bumper was damaged and the driver's side door was open. Officer Villarreal ran a check on the license plate and learned that the vehicle's registered address was about three blocks away from the accident site. As Officer Villarreal inspected the vehicle, he found "a clear plastic wad that had a crystal[-]like substance" in plain view in the handle of the driver's side door. Meagan Huerta, the State's forensic scientist, testified that the crystal-like substance was methamphetamine.

The vehicle was registered to Rocha's mother, Cipriana Cruz, who testified that Rocha was a mechanic and used the vehicle every day to get to work. It is undisputed that Rocha's tools were found in the vehicle's trunk on the day of the accident. Cruz also testified that she heard Rocha enter the home at approximately 8:00 a.m.

Officer Hector Garcia, the second officer to arrive on the scene, interviewed Rafael Gonzalez, an eyewitness. Gonzalez provided Officer Garcia with identifying information that implicated Rocha as the suspect. Gonzalez also told Officer Juan Flores, the lead

2

investigator on the case, that he had seen the suspect run away on foot wearing a light-green shirt and cargo shorts.[1]

Officers Sarah Svedberg and Oscar Guzman drove to the vehicle's registered address. Both testified that the address was within walking distance, or about a twenty-five- or thirty-second drive from the scene of the accident. They knocked on the door and Nestor Vesera,[2] Cruz's friend who was living there at the time, answered. Officer Guzman asked Vesera if Rocha was inside the home and if they could search for him, and according to the officers, Vesera "moved out of the way and nodded yes." While searching for Rocha, Officer Svedberg noticed a wet, light-green polo shirt and pair of cargo shorts in the living room. The officers located Rocha while he was in the shower. After Rocha emerged from the bathroom, he was arrested for suspicion of driving while intoxicated.

Rocha was charged by indictment with the offense of possession of a controlled substance, methamphetamine, in the amount of four grams or more but less than two hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). The jury found Rocha guilty. During the punishment phase, the jury found an enhancement paragraph alleging Rocha was a repeat felony offender to be true, and sentenced him to ten years' confinement. *See* TEX. PENAL CODE ANN. § 12.42(b). This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

In his first issue, Rocha argues that the evidence adduced at trial was legally insufficient to support his conviction.

---

[1] Gonzalez was not available to testify. Rocha objected to Officer Flores' testimony about Gonzalez's description of the suspect, and the trial court sustained a hearsay objection to some of Flores' testimony. We note that Rocha did not raise a Confrontation Clause issue at trial, nor is he arguing on appeal that Gonzalez's description of the clothes was improperly admitted.

[2] We note that the record also refers to Vesera by the last name 'Hernandez.' We further note that Vesera passed away prior to trial and was thus unavailable to testify.

**A. Applicable Law & Standard of Review**

We review the sufficiency of the evidence by considering all the evidence in the light most favorable to the verdict and asking whether "a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Villarreal Lopez v. State*, 267 S.W.3d 85, 95 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

We measure the sufficiency by the elements of an offense as defined by a hypothetically correct jury charge. *Miles v. State*, 357 S.W.3d 629, 631 (Tex. Crim. App. 2011). "The hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)) (emphasis omitted).

In possession of controlled substance cases, two evidentiary requirements must be met: (1) the defendant knowingly or intentionally exercised care, custody, control or management over the controlled substance, and (2) the defendant knew the substance was contraband. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (providing that "a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1"); § 481.102 (including methamphetamine under Penalty Group 1); TEX. PENAL CODE ANN. § 1.07(a)(39); *see also Medina v. State*, 565

4

S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Both elements of possession may be established with circumstantial evidence. *See Lassaint v. State*, 79 S.W.3d 736, 740 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.); *Villarreal Lopez*, 267 S.W.3d at 91.

"To establish the first element, the State must prove that the defendant's connection with the controlled substance is more than just fortuitous." *Medina*, 565 S.W.3d at 873. When the "accused is not in exclusive possession of the place where the contraband is found" or "when the contraband is not found on the accused's person," it cannot be presumed that the accused had knowledge of or control over the contraband "unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of the contraband." *Villarreal Lopez*, 267 S.W.3d at 91–92. "The consequence of this 'is that each defendant must still be affirmatively linked with the drugs he allegedly possessed, but this link need no[t] . . . be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt.'" *Id.* at 95 (quoting *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995)).

The factors a court may consider when determining whether the evidence establishes affirmative links between the defendant and the controlled substance include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the

5

defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (citing *Evans v. State*, 202 S.W.3d 158, 162 n. 12 (Tex. Crim. App. 2006)). It is not the number of links that is dispositive, but the combined logical force of all the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162. "Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

**B.  Analysis**

Rocha argues that the evidence was legally insufficient to prove he knowingly or intentionally exercised care, custody, control, or management over the controlled substance because the State failed to show affirmative links connecting Rocha to the methamphetamine. Specifically, Rocha argues that the "State failed to prove that he was the sole occupant of the car involved in the collision that caused property damage; that he fled from the scene; or, that at the time of the collision he was in possession, had knowledge, or was even aware, of the baggie contain[ing] drugs in the car."

We disagree. Officer Villarreal found the methamphetamine in the driver's side door handle. Cruz testified that though she owned the vehicle, Rocha drove the car daily to work. Rocha's work tools were in the trunk of the vehicle on the day of the accident, further supporting the State's contention that he was operating or, at minimum, inside the vehicle at the time of the accident. Cruz also testified that the first thing she heard after waking up that morning was the sound of Rocha coming home. Officers Villarreal,

6

Guzman, and Svedberg testified that Cruz's home was within walking distance of the accident. Gonzalez informed Officers Villarreal and Flores that the suspect was wearing a light-green shirt and cargo shorts. Officer Svedberg found a wet, light-green polo shirt and pair of cargo shorts in Rocha's living room. Based on this evidence, a reasonable juror could conclude that Rocha was driving the vehicle that day on his way home from work and fled the scene after crashing the car, where the methamphetamine was found in plain view in the handle of the driver's side door.

Rocha further contends that the evidence failed to show other affirmative links to Rocha and the methamphetamine, including "that he was under the influence of either drugs or alcohol; that he hid or destroyed any evidence; that he attempted to flee from police when they arrived at his home; or, that the police found drugs or other paraphernalia in . . . any place inside his home." However, the jury could have reasonably inferred from the trial testimony that Rocha fled the scene of the collision, which is a criminal offense and could affirmatively link Rocha and the methamphetamine. *See* TEX. TRANSP. CODE ANN. § 550.025(a); *Tate v. State*, 500 S.W.3d at 414 ("(7) whether the defendant attempted to flee; . . . (14) whether the conduct of the defendant indicated a consciousness of guilt."); *see also Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."). In any event, "it is well established that the absence of certain links do[es] not weigh against those that are present." *See Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also Davenport v. State*, No. 13-17-00363-CR, 2019 WL 613275, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 14, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding sufficient affirmative links present despite several

7

missing links and drugs being found inside another passenger's genitals); *Larios v. State*, No. 13-15-00022-CR, 2015 WL 9487107, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2015, no pet.) (mem. op., not designated for publication) (holding the jury could have concluded the absence of some affirmative links was attributed to the appellant being "careful and collected in the way she pursued her task").

In Rocha's case, a number of affirmative links were present: he was within walking distance from the accident and witnesses testified it would have been easy for him to run from the scene to his home; the contraband was in plain view in the driver's side door when officers arrived on scene; Cruz said Rocha usually drove the vehicle to work; Rocha's tools were in the trunk; and a witness to the accident provided officers with identifying information that implicated Rocha, including a description of clothing identical to that found in Rocha's home.

Rocha seems to argue in his brief that the State's case is insufficient because the eyewitness to the accident was not at trial and his "version of the events" is all that the State's witnesses rely on. However, judging the reliability of the officers' testimony is an issue of credibility, which is in the sole discretion of the jury. *See Villarreal Lopez*, 267 S.W.3d at 95 ("In addressing a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict.").

Viewing the evidence presented in the light most favorable to the verdict, we conclude that a rational juror could have found there were sufficient affirmative links

connecting Rocha to the methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d); *Villarreal Lopez*, 267 S.W.3d at 97. Rocha's first issue is overruled.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Rocha argues that his trial counsel rendered ineffective assistance by failing to argue that Officers Guzman and Svedberg violated Rocha's Fourth Amendment rights when they entered Rocha's home to secure his arrest without a warrant. Rocha contends that had his trial counsel not failed "to raise the warrantless entry issue either in a motion to suppress or in a submission of an [a]rticle 38.23 jury instruction to disregard the evidence," he would not have been convicted.[3] Specifically, Rocha argues that Vesera, a resident of the home, did not "freely and voluntarily" consent to the officers' request to enter the home.[4]

### A. Standard of Review & Applicable Law

We evaluate claims of ineffective assistance of counsel under the two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also Gonzalez v. State*, 510 S.W.3d 10, 30 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd). Under the *Strickland* standard, the appellant must show by a preponderance of evidence that: (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the result of the proceeding would have been different but for the attorney's deficient performance.

---

[3] We note that Rocha's brief fails to specify what evidence should be suppressed due to the allegedly improper entry of Rocha's home. We construe his brief to mean that the light-green shirt and cargo pants found by Officer Svedberg should have been suppressed.

[4] Rocha makes no argument in his brief that the officers did not have probable cause to arrest Rocha, nor does he argue that Vesera did not have actual or apparent authority to consent to the search. *See, e.g.*, *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010).

*Strickland*, 466 U.S. at 687. We may address either prong first, and if an appellant fails to prove one prong of the test, we need not address the other. *Id.*

When evaluating a claim of ineffective assistance, we look at the totality of the representation and the particular circumstances of the case. *Hartwell v. State*, 476 S.W.3d 523, 532 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Our review is highly deferential to the trial counsel, and we strongly presume that the assistance counsel provided was within the wide range of reasonable professional assistance. *Id.*; *Gonzalez*, 510 S.W.3d at 30. In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation and will not conclude that the conduct was deficient unless the conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 814.

## B.    Analysis

Generally, law enforcement must obtain a warrant based on probable cause to search for or arrest a person in their own home. *See, e.g.*, *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). However, voluntary consent is an exception to the warrant requirement. *Id.* at 685–86; *see also Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) ("Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause."). "The validity of a consensual search is a question of fact, and the State bears the burden to prove by clear and convincing evidence that consent was obtained voluntarily." *Gutierrez*, 221

S.W.3d at 685–86. To determine whether consent was freely given, and was not the result of duress or coercion, we examine the totality of the circumstances. *Id.* at 686–87.

In Rocha's case, the trial record supports a finding that Vesera consented to the search. The only evidence of the exchange between Vesera and Officers Svedberg and Guzman was the officers' trial testimony. When the officers arrived at the home, Vesera opened the door. He seemed to primarily speak Spanish. Officer Guzman led the conversation with Vesera because he spoke Spanish fluently. Officer Guzman asked Vesera if Rocha "was inside the residence" and according to Officer Guzman, Vesera "nodded" and "moved out of the way" to indicate his consent:

| [The State]: | Okay. And what did you tell [Vesera]? |
|---|---|
| [Guzman]: | We asked him if [Rocha] was inside the residence. |
| [The State]: | Okay. Without saying what he said, what happened next? |
| [Guzman]: | Well, he just nodded? |
| [The State]: | It was a nod. Could you show the jury what a nod means? |
| [Guzman]: | It was a slight nod in a way kind of saying yes or no. It wasn't very compliant. |
| [The State]: | It wasn't a shaking of the head left or right or was it up and down? |
| [Guzman]: | It was a very simply, you know, nod. |
| [The State]: | Okay. Did you get consent to go inside the house? |
| [Guzman]: | That we did, yes, sir. |

On cross-examination, Officer Guzman stated that he received consent from Vesera when he "moved out of the way and nodded yes."

11

[Counsel]:        Okay. And when you asked him for consent to search did he answer you verbally?

[Guzman]:        He actually just moved out of the way and nodded yes.

                  . . . .

[Guzman]:        All I know was that [Vesera] was inside the residence and he opened the door.

[Counsel]:        Okay. So just because he opened the door that means to you that he is giving you consent to come in, yes?

[Guzman]:        Yes.

Rocha's case is similar to *Gallups v. State*, 104 S.W.3d 361 (Tex. App.—Dallas 2003), *aff'd*, 151 S.W.3d 196 (Tex. Crim. App. 2004). At issue in that case was whether an officer received consent via a non-verbal gesture to enter the defendant's home. *Id.* at 365. The officer said that as he approached the door to the home, he saw Gallups, the defendant, through the front glass door, and asked him to step outside, to which Gallups responded by waving his arm for the officer to come in. *Id.* Gallups and his mother testified that no one in the home waved for the officer to come inside. *Id.* The court first concluded that the trial court "implicitly accepted [the officer's] testimony on the issue and disregarded both Gallups' and his mother's testimony to the contrary." *Id.* It then upheld the trial court's judgment, finding that the officer received consent to enter the defendant's home because the officer requested the defendant to come outside, there was no evidence of "a cultural or language disparity," and the non-verbal gesture was affirmative in nature and not ambiguous or neutral. *Id.* at 368.

In Rocha's case, the officers announced their presence and talked with Vesera at the front of the home before requesting to come inside. Though Vesera primarily spoke Spanish, Officer Guzman spoke fluent Spanish, thus mitigating any language barriers. *Cf.*

12

*Reyes-Perez v. State*, 45 S.W.3d 312, 316–19 (Tex. App.—Corpus Christi–Edinburg 2001, pet. ref'd) (holding that defendant did not consent to the search of his car because there was a language barrier between him and the arresting officer, who did not speak Spanish and communicated with the defendant primarily through hand gestures).

Officer Guzman also testified that Vesera nodded at the officers and moved out of the way for them to enter, gesturing in the affirmative for the officers to enter. *Cf. Roth v. State*, 917 S.W.2d 292, 297–98, 300 (Tex. App.—Austin 1995, no pet.) (holding that the State failed to show consent to enter because the officer testified that the resident of the home only "looked as though" he wanted the officer to come in and did not request or invite the officer to enter). Furthermore, Rocha has failed to point to any evidence of coercion or duress in the record. *See Gutierrez*, 221 S.W.3d at 686–87; *cf. State v. Pena*, 464 S.W.3d 389, 397 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd) (holding that the defendant did not consent to a warrantless search of his home because after he denied the officer's requests to enter, the officer told him that if he did not consent everyone in the house would go to jail).

Because the record indicates that Officer Guzman received consent to enter the home and search for Rocha, any complaint regarding the validity of the warrantless arrest would have been futile. Accordingly, we find that Rocha's representation at trial did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Since the first part of the *Strickland* test is not satisfied, we need not analyze the second part of the test. *Id.* Rocha's second issue is overruled.

## IV.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
5th day of October, 2023.